## SECURITIES INV. CO. v. WHITE.

Middle Section. August 10, 1935.

Petition for Certiorari denied by Supreme Court, March 13, 1936.

542

Albert Williams, Reese L. Macey, and S. L. Felts, all of Nashville, for Securities Inv. Co.

Norman Farrell, of Nashville, for Margaret White.

FAW, P. J.  This is the second appeal of this case to this court. Upon our former opinion and judgment, the case was removed to the Supreme Court by certiorari, and was by that court remanded to the circuit court for further proceedings as directed in a written opinion which accompanied the procedendo on the remand and which is in the transcript and made a part of the record on the present appeal in error.

The aforesaid opinion of the Supreme Court states the facts out of which this litigation arose and the principles of law applied to those facts by the Supreme Court.  And, as a convenient method of stating the case down to the time of the remand, we quote the opinion of the Supreme Court as follows:

"This is a replevin suit involving the right of possession of one Chevrolet automobile.

"On June 10th, 1931, defendant purchased this automobile from the Jim Reed Chevrolet Company, of Nashville, under a conditional sales contract, for $645.  She paid $125 in cash and executed a note for $497.90, the balance of the purchase price, plus $67.90 for 'handling charges,' said note being payable in monthly installments of $41.56. The payee negotiated said notes to the plaintiff.  Defendant met the first two deferred payments promptly, but before the third became due plaintiff instituted this suit upon the ground that defendant was attempting to dispose of said automobile in violation of her contract.  This conclusion was based upon the fact that defendant and a young man named Herring drove said automobile to the sales room of Parnell, an automobile dealer, and Herring stated to Parnell that they wished to sell the car as they intended to leave the state; that the car was purchased in the name of defendant under a conditional sales contract; that the purchase money notes were held by the plaintiff and stated the amount thereof.  Parnell telephoned the plaintiff, ascertained the statement of Herring to be correct, asked plaintiff what it would discount the notes for, and was offered a very small discount.  Parnell thereupon stated to Herring that he would pay off the debt to plaintiff for the car, but that he could pay them nothing for their equity in the car.  This ended the matter and no sale was made.  We are unable to see anything in this incident to indicate any bad faith on the part of the defendant, or any purpose to impair or endanger plaintiff's security.  Plaintiff, in

effect, seems to have recognized the right of defendant to consummate such a deal because, being advised that defendant wished to realize on her equity in the car, it agreed with Parnell if he would take up the notes it would allow him a discount.

"The provision of the contract relied upon by plaintiff is as follows:

" 'Should the buyer fail to keep and perform any or all of his agreements herein contained, and to promptly pay at maturity any and all sums hereunder, or if said Car is removed or attempted to be removed from the State in which the Buyer now resides, or to be otherwise disposed of, or if Buyer shall lend, sell, or encumber, or shall attempt to sell or encumber said Car or in case of misuse or abuse thereof, or whenever the Seller or his assigns shall deem the debt insecure, said Seller may without any demand or notice take possession of said Car and equipment, wherever found and without process of law, and all rights of the Buyer hereunder shall cease and terminate thereupon absolutely.'

"This court has held repeatedly that, notwithstanding the foregoing provision, possession, authorizing or requiring a sale by the conditional vendor under the statute, must be regained by process of law (by replevin usually) or by agreement of the parties, Mitchell v. Automobile Sales Co., 161 Tenn., 1, 4, 28 S. W. (2d), 51, 83 A. L. R., 955, and cases cited therein.

"By section 7293, Code 1932, it is provided:

" 'If the purchaser of personal property, under a written and/or printed contract of such a conditional sale, shall, without having paid for the same, and without the consent of the seller or assignee, sell, give away, or otherwise dispose of or conceal such personal property, with the intention of depriving the seller or his assignee of such property, or of its proceeds so that said seller or assignee cannot, by due process of law, recover possession of said property, when so entitled under the terms of his said contract, said purchaser shall be guilty of a misdemeanor, and be confined in the county jail or workhouse for a period of not more than six months, or shall be fined not more than fifty dollars, or both.'

"Construing the contract here involved in conjunction with the foregoing statute, it appears to us that it was the intention of the parties that the right of the seller to repossess the car should be accelerated whenever the buyer committed or attempted to commit an act which would tend to endanger or destroy the seller's security for his debt. Any bad faith act for such purpose would empower the seller to repossess the car. Ordinarily that would be a question for the jury. But where, as in this case, a situation is presented as to which reasonable minds could not reach different conclusions, it then becomes a question of law for the courts.

"In 13 Corpus Juris, 540-541, it is said:

" 'The words of a contract will be given a reasonable construction, where that is possible, rather than an unreasonable one, and the court will likewise endeavor to give a construction most equitable to the parties, and which will not give one of them an unfair or unreasonable advantage over the other. So that interpretation which evolves the more reasonable and probable contract should be adopted and a construction leading to an absurd result should be avoided.'

"It would be both unreasonable and inequitable to hold that a party who has purchased an automobile for $1,000 and owes $100 thereon, cannot realize on his equity therein in a manner that works no detriment or prejudice to the seller. In this case the buyer, desiring to leave the state, made inquiry of Parnell as to the value of her equity in the car. Parnell, being informed as to the state of the title, communicated with the seller for the purpose of ascertaining the balance of the unpaid purchase money, and obtaining the information, reported to defendant that she had no equity in the car. Suppose, on the other hand, Parnell had reported that he would pay the debt and give defendant $50, and such an agreement had been made and executed, could it be said that the buyer was actuated by bad faith in the transaction, or that she purposed to impair or endanger the seller's security? We think not. The situation would be different where a buyer was clandestinely, or under suspicious circumstances, endeavoring to dispose of such property without disclosing the existence of outstanding right and title notes and the true facts regarding the title. Another well recognized rule of construction is that where a contract is susceptible of two constructions, one of which will work a forfeiture and the other will not, that construction should be adopted which will prevent the forfeiture and preserve the rights of the parties. The testimony of Whitaker does not alter the situation, and it appears, furthermore, that the incident as to which he testified had nothing to do with the institution of this suit.

"In the circuit court it was contended that under the contract plaintiff had a right to repossess the car because it deemed its debt insecure. This question was not passed upon by the Court of Appeals. Plaintiff has filed no petition for certiorari, hence we are without jurisdiction to determine this question.

"We conclude, therefore, that under the facts of this case the plaintiff was not justified in bringing this suit and selling the car, and in so doing it was guilty of conversion, entitling defendant, under the statute, to a judgment for the value of the car, with interest and damages for its detention. We hold further that the plaintiff cannot set off its debt against the judgment for the value of the car. This is a possessory action in which a money judgment takes the place of

the property where it has been disposed of. Murray v. Motor Sales Corporation, 160 Tenn., 140, 22 S. W. (2d), 227, 23 S. W. (2d), 913, was not a replevin suit and is not in point for that reason. If the defendant is insolvent and does not consent to a set-off, plaintiff may obtain such relief by a bill in equity. Howe Sewing Machine Co. v. Zachery, 2 Cooper's Chancery Reports, 478.

"We concur with the Court of Appeals in its finding that there is no evidence in the record as to the value of the car and the damages for its detention, and for the purpose of ascertaining these sums the case will be remanded to the circuit court.

"The Court of Appeals was in error in holding that a sale of the car under the conditional sales statute, pending the disposition of a replevin suit for its possession, constitutes a conversion. Model Garage Co. v. Sanders, 165 Tenn., 168, 54 S. W. (2d), 939.

"We concur with the Court of Appeals in holding that defendant is not entitled to recover the amount of $298.12, paid on the car, as provided in the conditional sales statute. That statute provides for such recovery where, upon repossession of the car because of the consideration remaining unpaid at maturity, the seller fails to advertise and sell in compliance with the statute. In the instant case the car was not repossessed for default in payment of consideration at maturity, and upon repossessing the car it was advertised and sold as required by the statute. This case does not come within the statute.

"The judgment of the Court of Appeals will be modified in accordance with this opinion and the case remanded. McKinney, J."

After the remand to the circuit court, a jury was impaneled, and, upon evidence submitted and the charge of the court, the jury returned a verdict upon which judgment of the court was rendered, which verdict and judgment, as entered on the minutes of the trial court, are as follows:

"The jury on their oaths do say they find the matters in controversy in favor of the defendant, and find the plaintiff indebted to the defendant in the sum of $600, the value of the car wrongfully taken by the plaintiff, and the further sum of $93, representing interest thereon at 6% for thirty-one months from the date of the taking of said automobile to date, and the further sum of $33.33, which represents the loss of service of said automobile, for twenty days at the rate of $50 per month, making a total of $726.33.

"It is therefore ordered and adjudged by the Court that the defendant, Margaret White have and recover of the plaintiff, Securities Investment Company, and The Metropolitan Casualty Insurance Company of N. Y., the sum of $726.33, also all the costs of this case, for all of which execution may issue."

Each of the parties moved for a new trial, and defendant Margaret

White also moved to amend the judgment so as to "increase plaintiff's replevin bond to an amount sufficient to cover the value of the car with interest and damages from its retention;" but all of said motions were overruled by the trial court, and thereupon each of the parties appealed to this court, and has assigned errors here.

As both parties appealed, we will refer to them as plaintiff and defendant, respectively, according to their status on the record below, or as the investment company and Margaret White.

Through its assignments of error the investment company contends (a) that the uncontradicted evidence was that the value of the car was only $400 or $450, and that there was no evidence to support the verdict that the value of the car was $600; (b) that, if the value of the car was in excess of $500, the trial court had no jurisdiction to enter any judgment in this case (which was begun before a justice of the peace) except one of dismissal, leaving the defendant to her remedy by suit in the circuit or chancery court for the value of the car; and (c) all that defendant was entitled to recover was the value of her interest in the car, and that this was "the value of the car ($400 or $450) less her indebtedness thereon to plaintiff, which indebtedness was $414.78."

1. Defendant Margaret White bought the car in question from the Jim Reed Chevrolet Company at the price of $645 on June 10, 1931, and it was taken from her possession and delivered to the plaintiff, investment company, under the replevin writ in this case, on August 25, 1931. It was a new car when bought by defendant, and had been run about 5,000 miles when it was taken from her possession 2½ months later, but it was "in good condition."

All the evidence introduced on behalf of defendant with respect to the value of the car was the testimony of the witness Floyd E. Jenkins. If there is any evidence in the record to support the jury's verdict of $600 as the value of the car, it must be found in the testimony of Jenkins, which is as follows:

"Direct examination by Mr. Farrell:

"Q. This is Mr. Floyd E. Jenkins? A. Yes, sir.

"Q. What company are you connected with? A. Hertz Drivurself System.

"Q. Does that company rent cars to the public, can a person go down there and rent a car from you? A. Yes, sir.

"Mr. Felts: Just to save the record, I am objecting to this, but don't want to repeat all the time.

"The Court: I understand you will be objecting all the time to this evidence.

"Mr. Felts: Yes, sir.

"The Court: I will take it under advisement.

"Q. Do you buy and sell and trade in cars? A. Yes, sir, we do

not sell cars, that is not a part of our business, we only sell the cars that we have used, after we have used them for a period of time.

"Q. You buy a car new, and after you have used it a while you sell it and replace it with another car? A. Yes, sir.

"Q. So that you try to keep, after a reasonable time, the cars replaced with new ones? A. Yes, sir.

"Q. Then you are in the business of renting out those cars? A. Yes, sir.

"Q. Mr. Jenkins, suppose a Chevrolet coach was bought new on June 10, 1931, and was taken away from the purchaser on August 25, 1931, a little over two months later, and the car had cost $645 when new, what would you say was the fair value of that car at the time it was taken away? A. As to the value of the car, it should not have depreciated more than $50; if the car was going to be sold or traded in the owner of the car would probably have to take $100 or $125 less than he paid for it. . . .

"Cross-examination by Mr. Felts:

"Q. Are you familiar with the market value of a second-hand car? A. I am not familiar with the prices of used cars after they have become a year or two old.

"Re-direct examination by Mr. Farrell:

"Q. But your opinion that you gave about a car that had been used a little over two months is based upon your experience of what you get for a year-old car, wasn't it? A. Yes, sir.

"Re-cross examination by Mr. Felts:

"Q. What sort of cars do you use in your business? A. We use Chevrolets and Fords.

"Q. How much loss do you take on the trade-in of a car, that is a year old? A. ,We depreciate our cars by the mile, after we have used a car for a year and driven it about 10,000 to 13,000 miles, we usually get about half what we paid for it, which would be about $325 on a Chevrolet or Ford.

"Q. And that is the trade-in value when you buy a new car? A. Yes, sir.

"Q. In other words, if you were selling for cash you would not be able to get that much out of it, not get as much as you can in a trade-in? A. No, sir, you are never able to do that."

Four witnesses for plaintiff testified concerning the cash value, or market value, of the car in question on August 25, 1931, as follows: L. G. Aymard, "around $400;" E. B. Tidwell, "around $400" or "from $400 to $450;" J. C. White, "$375 or $400;" J. P. Thornton, "around $400 . .. . maybe a fraction above that."

The four witnesses for plaintiff just named had much experience in the sale of used cars in Nashville during the year of 1931 and before and since that time. Aymard was the manager of plaintiff, invest-

ment company. Tidwell had been selling used cars since 1925—a part of the time in connection with George Cole Motor Company and a part of the time in connection with the Hull-Dobbs Motor Company. White, of the firm of Dresslar & White, had been in the automobile business since the year 1910. Thornton was "used car manager" for Dresslar & White in the year of 1931.

The testimony of Tidwell, White, and Thornton discloses their familiarity with the market value of used cars, and fully qualifies them to testify as experts on that subject.

■ Another fact appearing in the proof is that the car sold at public auction, 20 days after it was replevined by plaintiff, for $417.50. There is no evidence that the sale was not in all respects fairly conducted. This was "some evidence" of its market value. 2 Jones on Evidence (2 Ed.), sec. 704, p. 1322.

"A fair public sale is competent, and ordinarily satisfactory, evidence of the value of the thing sold." Mayberry v. Lilly Mill Co., 112 Tenn., 564, 571, 85 S. W., 401, 403.

It is insisted for plaintiff that the defendant's witness Jenkins was not shown to be familiar with the market value of used cars, but that his experience and knowledge related merely to the usable value and "trade-in" value of used cars, and his testimony (which has been quoted) lends color to this insistence.

■ It will be remembered that the witness Jenkins stated that, if you were selling (a car) for cash, you would not be able to "get as much as you can in a trade-in." This was the statement of a fact recognized by the courts. "The difference between a cash price and a trade-in price is too marked, and too familiar to require discussion." Lawrence Construction Co. v. Sales Corporation, 164 Tenn., 651, 653, 51 S. W. (2d), 837, 838.

"A difficulty encountered in most cases where the admissibility of expert testimony is considered is the lack of a standard by which the knowledge of the expert can be measured. Thus it is that, even where such testimony is admitted, the weight of the opinion of the expert is left to the determination of the jury, to be fixed by them in accordance with the degree of qualification shown by the witness. But in the matter of expert testimony as to values, this lack of a standard is particularly apparent. It has been well said that there is no rule of law, and there can be none, defining what a witness must know of property before he shall be permitted to give an opinion regarding its value. It may only be observed, generally, that the expert must show a sufficient foundation of special knowledge to serve as a reasonable basis for an opinion, after which the determination of the weight to be accorded such opinion is a question for the jury. Although the witness may avail himself of many sources of information, he must have knowledge of the subject and of market

value, if there is one, at the place in question. . . . The practice now prevails everywhere of calling experts to prove the values of land and personal property; although, as heretofore shown, this is a subject as to which ordinary witnesses may also give their opinions. All such testimony, however, is not conclusive upon the jury, but merely advisory." 3 Jones on Evidence (2 Ed.), sec. 1363, pp. 2490-2492.

However, unless the witness shows at least a reasonable degree of expert knowledge on the subject about which he is called to testify, he must state the facts upon which he bases his opinion, and the probative value of his testimony depends upon these facts. Lebanon & Nashville Turnpike Co. v. Creveling, 159 Tenn., 147, 169, 17 S. W. (2d), 22, 65 A. L. R., 440; Fitch v. American Trust Co., 4 Tenn. App., 87, 101.

We do not think we are at liberty to discard the statement of the witness Jenkins that "if the car was going to be sold . . . the owner of the car would probably have to take $100 or $125 less than he paid for it." The jury could reasonably interpret this as an opinion of the witness that the selling price, or market value, of the car was $100 or $125 less than the original cost price of the car when new, and, as this was shown to be $645, it was, in effect, the statement of the witness that the market value of the car was $545 or $520. No witness placed the market value of the car higher than this, and there was therefore no evidence to support the verdict of the jury that the value of the car was $600; and, to this extent, the plaintiff's first assignment of error is sustained, but the assignment that "the uncontradicted evidence was that the value of the car was only $400 or $450" is overruled.

2. Did the circuit court have jurisdiction to enter any judgment in this case except one of dismissal?

The suit was begun by the investment company before a justice of the peace on August 25, 1931, and the plaintiff at that time gave a replevin bond in the sum of $500.

Before the case was reached for trial in the circuit court, the plaintiff was ordered by the court, "on proper motion of defendant," to execute a good and sufficient replevin bond in the sum of $600, in lieu of the bond given before the justice of the peace, and this was done.

By the statutes in force when this suit was instituted, the jurisdiction of justices of the peace in actions of replevin was limited to cases wherein the value of the property sued for did not exceed $500. Shannon's Code, sec. 5935, subsec. 3, and sec. 5149.

The value of the car replevined in the instant case was not set out, either in the affidavit, the bond, or the writ, when the action was begun, and it was not necessary that it should be there stated.

Cline v. Gaut, 1 Heisk., 399, 402. But it was the duty of the justice of the peace to take a bond in double the value of the property, and, as the plaintiff executed and tendered, and the justice of the peace accepted, a bond in the sum of $500, the presumption is that they then valued the car at $250. Cline v. Gaut, supra.

In the aforementioned replevin bond, executed by the plaintiff and its surety and filed in the circuit court in lieu of the bond filed in the justice of the peace court, it is stated that the described car is "of the value of three hundred dollars." Nothing appeared in the record from which it could be inferred that the replevined car exceeded $500 in value, until the witness Jenkins testified at the trial, in the circuit court on the remand from the Supreme Court.

■ For the purpose of fixing jurisdiction of the justice of the peace, the plaintiff was bound by the replevin bonds it executed, and cannot now be heard to question the power of the justice of the peace to entertain the suit and to render any judgment, within the limits of his statutory jurisdiction, which the facts warranted. Cline v. Gaut, supra; Jacobs v. Parker, 7 Baxt., 434; Gray v. Jones, 1 Head, 542, 545.

■ But a justice of the peace cannot render a valid judgment in excess of $500 for the value of the property in an action of replevin. Frazier v. Nashville Gas & Heating Co., 164 Tenn., 8, 10, 46 S. W. (2d), 62; Gray v. Jones, supra; Jacobs v. Parker, supra.

■ And, on appeal, the jurisdiction of the circuit court is limited to that of the justice of the peace. Dixon v. Caruthers, 9 Yerg., 30; Crow v. Cunningham, 5 Cold., 255; White v. Buchanan, 6 Cold., 32; Houser v. McKennon, 1 Baxt., 287; Harris v. Hadden, 7 Lea, 214, 216; Tuck v. Chaffin, 89 Tenn., 566, 568, 15 S. W., 97; Frazier v. Nashville Gas & Heating Co., supra.

The defendant relies upon the case of Godsey v. Weatherford (1888), 86 Tenn., 670, 8 S. W., 385, wherein it was held that a justice of the peace is authorized to render judgment against an unsuccessful plaintiff in a replevin suit, who fails or refuses to return the property, for any sum that the proof may justify, not exceeding $1,000.

In the course of the opinion in the case last cited the court said:

"In actions of replevin, the jurisdiction of justices of the peace is by statute expressly limited to cases in which the property sought to be recovered does not exceed $500 in value. Code M. & V., sec. 4130.

"But it does not follow from this limitation with respect to the value of the property, that the jurisdiction to render a money judgment against the unsuccessful plaintiff, in an action of replevin, is also limited to $500. On the contrary, it is provided by another statute that such judgment shall be for double the value of the property.

That statute is in these words: 'If the justice adjudge the property to belong to the defendant, and the plaintiff fail or refuse to deliver it up to the defendant, the justice shall render judgment against the plaintiff and his sureties for double the value of the property replevied, and execution shall forthwith issue for the same, and the cost of suit.' Code, section 4133.

"If, in such a case, the justice find the value of the property to be up to the maximum of his jurisdiction, namely, $500, he is then authorized and required, by the very terms of the statute to give the defendant judgment for $1,000."

Obviously the opinion in Godsey v. Weatherford, supra, is predicated upon the then existing statute (Code 1858, sec. 3397; Milliken & V. Code, sec. 4133); but by a later statute (Acts 1905, chap. 31; Shannon's Code, sec. 5152) said Code section was amended so as to read as follows:

"If the justice finds the issue in favor of the defendant and adjudge the property replevied, to belong to the defendant, or the plaintiff dismisses or fails to prosecute his suit, the justice shall under (render) judgment against the plaintiff and his sureties on the replevin bond that the property replevied be returned to the defendant, or on failure to do so, that the defendant recover of plaintiff and sureties on replevin bond the value of the property replevined, with interest thereon and damages for the detention of the same."

It is seen that the rule announced in Godsey v. Weatherford, supra, has not been operative since the enactment of the Acts 1905, chap. 31, supra; Keelin v. Graves, 129 Tenn., 103, 115, 165 S. W., 232, L. R. A. 1915A, 421; Frazier v. Nashville Gas & Heating Co., supra.

It follows, in the instant case, that the circuit court could not render a valid judgment for $600 (or for any sum in excess of $500) for the value of the replevined car; but it does not follow that, in the present state of the record, the suit must be dismissed.

On the face of the technical record, the court had jurisdiction of the parties and the subject-matter of the litigation, and we have found that there is no evidence to support the jury's verdict that the value of the car was $600. It therefore "doth not yet appear" that the value of the replevined property was in excess of the jurisdiction of the justice of the peace.

In the case of Frazier v. Nashville Gas & Heating Co., supra, upon which plaintiff mainly relies for support of its contention that the only judgment the circuit court could render was one of dismissal, it appeared from recitals in the replevin bond and in the writ that the value of the goods involved was in excess of $500.

Unless and until it is established as a fact of record that the value

of the car in question exceeded $500 at the time it was replevined, the sum or sums which the defendant is entitled to recover of the plaintiff and the surety on its replevin bond may be adjudicated in the present suit.

3. The next (and last) proposition advanced by plaintiff investment company, through its assignments of error, is that (in any event) all that defendant was entitled to recover was the value of her interest in the car, which, the plaintiff insists, was "the value of the car ($400 or $450), less her indebtedness thereon to plaintiff, which indebtedness was $414.78."

The question thus made was decided adversely to plaintiff's contention in the opinion of the Supreme Court in this case, wherein the court said:

"We hold further that the plaintiff cannot set off its debt against the judgment for the value of the car. . . . If the defendant is insolvent and does not consent to a set-off, plaintiff may obtain such relief by a bill in equity."

The holding of the Supreme Court just quoted is not only authority controlling this court (because it is a ruling of the court of last resort), but it is "the law of the case." 2 R. C. L., p. 223, par. 187.

However, it is claimed by plaintiff that the record shows that defendant consented that plaintiff might set off its debt against defendant's right of recovery in the present action. We do not think that the record shows such consent.

The record discloses a colloquy between counsel and the court at the beginning of the trial below, as follows:

"Mr. Felts: I take it that we can stipulate as to the amount of balance due, $414.78, in August, 1931, when the car was taken.

"The Court: And add the interest on it.

"Mr. Felts: $414.78.

"Mr. Farrell: I thought it was $400, but if you can prove that it is all right.

"Mr. Felts: The opinion says that.

"The Court: You gentlemen make the calculation and agree on the specified amount, so the jury will have it.

"Mr. Felts: That is what it is."

Later, plaintiff's manager, Mr. Aymard, testified that the amount of the indebtedness against the car at the time it was taken was $414.78.

When the trial judge came to charge the jury, he first instructed them, in substance, that Margaret White had a right to recover the value of the car, plus interest thereon, and, as damages, the reasonable rental value of such car from the time it was wrongfully replevined until such time as it was converted or sold as shown by the

evidence, less the amount which Margaret White owes the Securities Investment Company, with interest at 6 per cent on said sum.

But counsel for defendant interrupted the court before the charge was concluded, and what occurred at that time appears from the record as follows: .

"Mr. Farrell: I do not think this question of what Margaret White owes these people ought to be injected into this lawsuit, and it should not be. I told Mr. Felts we could agree on it, that is a matter of pure mathematics. The Supreme Court said that in their opinion.

"The Court: I thought you agreed on that, and that matter was before the jury.

"Mr. Farrell: No, I agreed that we settle that matter. I want to get the issues on the value of the car, the interest and the loss of use. I will settle that thing with Mr. Felts.

"The Court: I thought that thing had been agreed upon, and that was a matter of pure mathematical calculation with the jury.

"Mr. Felts: I did too.

"The Court: I will modify the charge in that respect. The only question for the jury to decide is, considering all the evidence in the case, what was the reasonable cash value of this car at the time of the wrongful taking, at the time of the wrongful taking, that is, at the time it was replevied by the Securities Investment Company, plus interest at 6% from the time of that wrongful taking, with damages, added such as I have heretofore presented to the jury in charge."

It is plain (and is conceded) that under the opinion of the Supreme Court in this case "the plaintiff cannot set off its debt against the judgment for the value of the car" without the consent of the defendant; and we find that the record does not show such consent.

4. After verdict and judgment at the last trial below, the defendant moved the court "to increase plaintiff's replevin bond to an amount sufficient to cover the value of the car with interest and damages from its retention." The motion was overruled by the trial court, and this ruling is challenged by defendant's first assignment of error.

It will be remembered that, before the first trial in the circuit court, the plaintiff was, on motion of defendant, required to give a new replevin bond in the sum of $600, and defendant acquiesced in the acceptance of this bond and went to trial on the merits and again upon the inquest for the assessment of the value of the car with interest and damages, without questioning the sufficiency of the bond.

The defendant may waive defects and irregularities in a replevin bond, not jurisdictional, by proceeding to trial on the merits without objection to the bond, or by failure to make objection before entry of judgment. 54 C. J., pp. 485, 486, secs. 132, 133.

To require a judgment debtor to increase his bond in order

to better secure a judgment theretofore rendered would be somewhat of a novelty in judicial procedure.

For defendant it is insisted that her said motion for an increase of plaintiff's replevin bond should have been sustained upon the authority of section 9302 of the Code 1932, which provides as follows:

"After the return of the writ, if it appear that the bond is insufficient in form, amount of penalty, or in respect to the solvency of the sureties, the court may remedy the defect by such orders as are necessary, and may hold the plaintiff in custody till said orders are complied with; and the court may make such other orders or enter such judgment as may be deemed expedient to secure the rights of the plaintiff or defendants."

Section 9302, supra, is a part of the article of the Code (article 1) devoted to the subject of "replevin in the circuit or chancery court." The provisions for "replevin before a justice of the peace" are in a separate article, article 2 (sections 9304-9309), which latter article contains no provision similar to section 9302.

Moreover, it has been held that the unusual and extraordinary powers vested in the court by section 9302 (section 3392 of the Code of 1858) were manifestly restricted to the execution of the bond which is originally given at the institution of an action of replevin— that it is the fraudulent inception of the action by a false and worthless bond that the law was intended to reach. Cash v. Quenichett, 5 Heisk., 737, 740, 741.

. Defendant's first assignment of error is overruled.

5. The defendant's second assignment is that the trial court erred in charging the jury as follows:

"In arriving at your verdict, you will first determine the reasonable cash value of the automobile at the time it was replevined by the Securities Investment Company, as shown by the preponderance of all the evidence; you will then add 6% interest on such cash value from the date of the replevin, August 25, 1931, until the present time. To this amount you will add as damages the reasonable rental value of such car from the time it was wrongfully replevined until such time as it was converted or sold, as shown by the evidence in this case."

And in refusing defendant's special request to charge the jury as follows:

"The defendant, Margaret White, is entitled to recover in addition to the value of the car at the time taken, with interest, a reasonable compensation for its use from the time of the taking to the present time."

The point of controversy under this assignment is whether defendant was entitled to damages for the detention of the car "from the time it was wrongfully replevined until such time as it was converted

or sold'' (20 days), as the trial judge instructed the jury, or from the time of the taking to the time of the trial (31 months), as defendant requested the trial judge to charge the jury.

The Supreme Court held, on the former appeal, that defendant was entitled to a ''judgment for the value of the car, with interest and damages for its detention.'' That is the language of the statute; but the court did not indicate the period of detention for which the plaintiff would be liable in this case.

However, the Supreme Court held that ''the plaintiff was not justified in bringing this suit and selling the car, and in so doing it was guilty of conversion.''

At the trial on the remand, the trial court manifestly proceeded on the theory that the conversion of the car by the plaintiff was consummated when it was sold by plaintiff, and that from that time plaintiff had no further possession or control of the car and ''could not return it to the defendant;'' hence the court did not render the judgment usually rendered in replevin cases, viz., that the car be returned to the defendant, or, on failure of plaintiff to return the car, that defendant recover of plaintiff and the sureties on its replevin bond the value of the car etc. (Shannon's Code, section 5152), but merely ordered and adjudged that the defendant, Margaret White, have and recover of the plaintiff, Securities Investment Company, and the Metropolitan Casualty Insurance Company of New York, the sum of $726.33, also all the costs of this case, for all of which execution was awarded.

This was, we think, the form of judgment contemplated by the Supreme Court, for in its opinion that court said:

''This is a possessory action *in which a money judgment takes the place of the property where it has been disposed of.*'' (The italicizing is ours.)

The car was ''disposed of'' by the plaintiff when it was sold at public auction 20 days after it was replevined, and it was thereafter no longer in the possession or control of the plaintiff, and the plaintiff was without power to return it to the defendant; hence the Supreme Court held that, although this is a possessory action, the plaintiff was guilty of conversion of the car, and a money judgment takes the place of the car, by which, we assume, the court meant that, after the car had been ''disposed of'' by the plaintiff, in the manner and under the circumstances disclosed by the record, the defendant was no longer entitled to a judgment against the plaintiff for the return of the car, but her right of recovery was thereafter limited to a ''money judgment'' for the value of the car, with interest, and damages for its detention.

If, after the plaintiff sold the car, the defendant was not entitled to a judgment for its return, it would seem to be a logical sequence

that defendant was not entitled to a judgment for its "detention" after it was sold. We are therefore of the opinion that the trial judge did not err in the charge given and in refusing the request to charge of which defendant complains through her second assignment of error, and that assignment is overruled.

6. The jury's verdict of $33.33 as damages for the detention of defendant's car is supported by ample proof, and the judgment of the trial court on the verdict in that respect is affirmed; but, as before stated, we find no evidence supporting the finding of the jury that the plaintiff is indebted to the defendant in the sum of $600 for the value of the car in controversy. The judgment for $600 for the value of the car, and $93 interest thereon, and for all the costs of the cause, is reversed, and the verdict of the jury in respect to the value of the car and interest thereon is set aside, and the cause will be remanded to the circuit court for a new trial of the issue with respect to the value of the car.

The practice of limiting the retrial on the remand, in a proper case, has been approved in this state. Perkins v. Brown, 132 Tenn., 294, 300, 177 S. W., 1158, L. R. A., 1915F, 723, Ann. Cas., 1917A, 124; Aycock v. Nashville, C. & St. L. R. Co., 4 Tenn. App., 655, 664; Newberry v. Hamblen County, 157 Tenn., 491, 494, 9 S. W. (2d), 700; Gulf Refining Co. v. Frazier (Tenn. App.), 83 S. W. (2d), 285, 304.

The costs of the appeal will be adjudged against the defendant Margaret White.

The costs heretofore accrued, and which may hereafter accrue in the circuit court, will await the future judgment of that court.

Crownover and DeWitt, JJ., concur.