# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
December 12, 2013 Session

## DEIDRA KAY MINOR v. MELVIN RICHARD NICHOLS

**An Appeal from the Circuit Court for Shelby County**
**No. CT-005750-08      Robert L. Childers, Judge**

---

**No. W2012-01720-COA-R3-CV - Filed January 31, 2014**

---

This appeal involves the interpretation of a marital dissolution agreement. In the parties' divorce, the wife was awarded the marital home and the associated debt on the home. In the parties' marital dissolution agreement, the husband was required to pay alimony in an amount that covered half of the wife's monthly mortgage payments. The alimony payments were to be made for fifteen years or until the mortgage on the marital home was "paid off in full." The husband stopped making his alimony payments and the wife filed a contempt petition against him. While the contempt petition was pending, the wife fell behind on her mortgage payments and the house was sold in foreclosure. The husband then filed a petition to terminate his alimony obligation. After a hearing on both petitions, the trial court held the husband's failure to pay alimony constituted willful contempt of court. Interpreting the marital dissolution agreement, however, the trial court also held that the husband's alimony obligation ended when the marital home was sold in foreclosure, because at that point the mortgage was "paid off in full." The wife now appeals. We decline to interpret the parties' marital dissolution agreement in a manner that would terminate the husband's alimony obligation if the foreclosure resulted from his contemptuous failure to pay alimony to the wife. Accordingly, we vacate the trial court's decision and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Vacated in Part and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

William E. Friedman, Memphis, Tennessee, for the Plaintiff/Appellant, Deidra Kay Minor

No brief filed on behalf of Defendant/Appellee, Melvin Richard Nichols

<h1 style="text-align:center">MEMORANDUM OPINION[1]</h1>

<strong>FACTS AND PROCEEDINGS BELOW</strong>

On March 2, 2009, Plaintiff/Appellant Deidra Kay Minor ("Wife") and Defendant/Appellee Melvin Richard Nichols ("Husband") were divorced by final decree. The final decree incorporated the parties' marital dissolution agreement ("MDA"), signed on January 12, 2009. The MDA reflects that the parties' marital home was the only marital property and the mortgage on the home was the only marital debt.

Under the MDA, Wife received the marital home, along with the mortgage and all of the related obligations. Husband, in turn, was to convey to Wife by quitclaim deed his interest in the house. The MDA provided:

> **20. REAL ESTATE.** . . . The parties agree that Wife will continue to live in the marital residence and will be responsible for payment of all upkeep of the property, including all bills associated with the residence including, but not limited to, mortgage payments, utilities, phone service, house cleaning service and minor and major repairs.
>
> Husband agrees that he will sign a Quit Claim deed conveying any interest he has in the property to Wife and disclaims any interest he has in the equity of the home. Wife agrees to hold Husband harmless and indemnify him from any payments thereof. She shall also remove Husband's name from the mortgage within one (1) year from the entry of the Final Decree if it is possible for her to do so.

The MDA included a specific provision linking Husband's alimony obligation to the mortgage on the marital home:

> **21. ALIMONY.** Husband shall pay the sum of $314.00 per month to Wife as periodic alimony, with said amount being paid to Wife beginning on the

---

[1]**Rule 10. Memorandum Opinion**

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

Tenn. Ct. App. R. 10.

fifth day of the first month after the [MDA] is signed, and continuing on the fifth day of each month thereafter for fifteen years, or until the mortgage on the parties' home, as it exists as of the time the [MDA] is signed, is **paid off in full**. These payments will terminate automatically upon the first to occur of Wife's death or remarriage or Husband's death. . . . This provision is not modifiable by the court. After the amount set out herein has been paid in full, Husband will have no further obligation to Wife for any spousal support, except as set out herein. . . .

(Emphasis added). It is undisputed that Husband's alimony was intended to help Wife meet her mortgage obligation of $636 per month.[2]

Husband quickly fell behind in his alimony payments. On November 19, 2009, Wife filed her first petition for contempt against Husband for failure to make his alimony payments in October and November 2009. On July 8, 2010, the trial court entered an order holding Husband in contempt of court and finding that Husband owed Wife a total of $2,940.85, for alimony for October 2009 through June 2010 plus interest and $2,000 in attorney fees.

The trial court's order apparently did not motivate Husband to stay current on the required alimony payments. On November 1, 2011, over a year after the trial court's first contempt order, Wife filed a second petition for contempt against Husband. This second petition asserted that Husband had failed to pay eight months of alimony in 2011. The missed payments totaled $2,512.00. Wife's contempt petition asserted that Husband "deliberately, willfully and wrongfully failed and refused to comply with" his alimony obligation.

Meanwhile, Wife fell behind on her mortgage payments. On January 6, 2012, Wife's home was sold in a foreclosure sale to the lender. Documents filed in the appellate record indicate that, at the end of 2011, the county property assessor valued the marital home at about $111,900.[3] At that time, Wife owed about $41,700 on the mortgage, so she had significant equity in the home. In the foreclosure, however, the lender purchased the home for only the amount remaining due on the mortgage. Thus, while the outstanding debt on the house was satisfied or "paid off," Wife lost the substantial equity she had in the home.

On March 22, 2012, before the trial court held a hearing on Wife's second contempt petition, Husband filed a petition to modify the final decree of divorce to terminate his alimony obligation. In the petition to modify, Husband acknowledged that the MDA stated that the

---

[2]The mortgage amount was taken from Wife's affidavit filed in the trial court.

[3]This valuation is taken from the records of the Assessor of Property of Shelby County of Tennessee.

alimony obligation was "not modifiable by the Court." Husband asserted that, nevertheless, he was not represented by counsel during the divorce proceedings, and that the provision in the MDA making the alimony "not modifiable" was "unconscionable and unenforceable." Husband asked the trial court to relieve him of his alimony obligation because he did not have the ability to pay it, noting that his only income was $1,342 per month in social security and retirement benefits. At the time he executed the MDA, Husband claimed, he was living with family members and had no rental or mortgage expense. In January 2011, Husband said, he moved into his own residence, thus increasing his expenses substantially. He argued that this was a substantial and material change in circumstances that left him unable to make his alimony payments and warranted the termination of his alimony obligation.

In the alternative, Husband argued, the fact that "the parties' home was sold in a foreclosure sale on January 6, 2012," constituted a substantial and material change in circumstances: "The alimony payments were related to the mortgage payments. [Wife] no longer has this mortgage payment, and the main reason for [Husband] paying alimony has ceased to exist." He claimed that he "has struggled to make his payments since entry of the Final Decree of Divorce and this further shows that he does not have the present ability to pay the alimony." Thus, for this additional reason, Husband asked the trial court to terminate his alimony obligation.

In her response to Husband's petition to modify, Wife agreed that "the alimony payments were related to the mortgage payments on the parties' home," and that the home was sold at a foreclosure sale in January 2012. But she opposed Husband's request for termination of his alimony obligation because she "lost the house to foreclosure because of [Husband's] failure and refusal to pay her the $314.00 per month." As a result of the foreclosure sale, Wife claimed, she lost about $70,000 of equity in the house. Wife asserted that this loss was a direct result of Husband's willful failure to abide by his obligation to pay her the $314 per month in alimony. Wife asked the trial court to dismiss Husband's petition to modify and to award her a judgment against Husband for the entire arrearage plus the equity she had in the house as of the January 2012 foreclosure sale.

On June 22, 2012, the trial court conducted a hearing on the parties' motions. The trial court apparently issued an oral ruling at the hearing, but the appellate record does not contain a transcript of either the hearing or the oral ruling. On July 2, 2012, the trial court entered a written order outlining its ruling:

> 1. [Husband] was ordered to pay $314.00 per month alimony to [Wife] pursuant to a Final Decree of Divorce entered on March 2, 2009. The Court found that [Husband] was in arrears $3,454.00 plus $317.45 interest through June, 2012. The arrears and interest total $3,771.45.

-4-

2. The Court also awarded [Wife's] attorney . . . an attorney fee of $1,500.00, making the total amount awarded to [Wife] $5,271.45.

3. [Husband] made a purge payment of $2,000.00, leaving a balance of $3,271.45. [Husband] shall pay [Wife] $300 per month to satisfy the balance. The payments shall be sent to [Wife's] attorney . . . until paid in full.

4. The Court ruled that under the circumstances, it was not necessary for the Court to make a ruling on whether or not [Husband] was in willful contempt of the Court's previous Order.

5. The Court determined that based upon Paragraph 21 of the [MDA], the $314.00 monthly payment that [Husband] was paying to [Wife] was lump sum alimony rather than periodic alimony, and these payments could not be modified by the Court.
...

7. The Court ruled that since the alimony payments were to be paid for a specified period of time and for a sum certain, these payments were deemed lump sum alimony pursuant to T.C.A. § 36-5-121. Since the payments were to continue for fifteen years or until the mortgage is paid in full, the Court ruled that the alimony payments terminated in January, 2012, the month the parties' home . . . was sold at a foreclosure sale.

8. The Court determined that the mortgage was deemed "paid in full" once it was sold in foreclosure. Neither [Wife nor Husband] have any further liability on the mortgage. The alimony payments were terminated upon the payment of the mortgage in full as a result of the foreclosure sale. Therefore, it was not necessary for the Court to rule on the Petition To Modify Final Decree of Divorce.

9. The Court ruled that [Husband] was not required to make any alimony payments after January, 2012.

Thus, the trial court deemed Husband's alimony obligation to be lump-sum alimony and nonmodifiable. It also found that Husband had failed to make the required alimony payments through January 2012. The trial court held, however, that the question of whether Husband was in willful contempt of the final decree was moot because Husband's alimony obligation terminated when the house was sold in foreclosure in January 2012. The trial court reasoned that, once the foreclosure occurred, neither party had any further obligation to pay the

mortgage and it was "paid off in full" under the terms of the MDA.  In its written order, the trial court did not address Wife's argument that Husband's contemptuous failure to pay alimony caused the foreclosure and caused Wife to lose the entire equity in the house. Wife filed a motion for reconsideration.[4]  In her motion, Wife pointed out that no testimony or other evidence was presented at the June 22, 2012 hearing; the trial court based its ruling solely upon the pleadings and statements of counsel.  She reiterated her assertion that Husband's contemptuous conduct caused her to lose her home, and she attached to the motion her own affidavit supporting her position.  In her affidavit, Wife averred that, other than Husband's required alimony payments, her only income at the time was $872.59 per month in social security benefits.  She explained that the $636 monthly mortgage payment consumed most of her monthly income, so she could not make the mortgage payments without the additional $314 from Husband.  Wife also attached to her motion the Deed of Trust on the marital home; it indicated that, had the mortgage payments been made as scheduled, the mortgage would have been paid off in February 2023.  Thus, she contended, the trial court's interpretation of the MDA, allowing Husband to benefit from his willful failure to pay, was unjust: "The Court's ruling is entirely unjust, and is most unfair to [Wife], in that [Husband] is rewarded, and [Wife] has sustained the loss of her home, due to [Husband's] failure and refusal to pay to [Wife] the monthly alimony payments of $314.00."

On July 13, 2012, the trial court conducted a hearing on Wife's motion to reconsider.  The appellate record includes a transcript of that hearing.  At the hearing, Wife was prepared to testify that Husband's failure to pay the required alimony caused her to default on the mortgage.  The trial court declined to permit Wife to testify, finding her testimony unnecessary because all of the arguments made in Wife's motion to reconsider had been made in the previous hearing.  At the conclusion of the hearing, the trial court adhered to its earlier ruling and denied the motion.  On July 23, 2012, the trial court entered a written order consistent with its oral ruling, again holding that the mortgage on the property was "paid off in full" within the meaning of the MDA when the house was sold in foreclosure, so Husband's alimony obligation terminated at that time.  From this order, Wife filed a notice of appeal.

On December 19, 2012, in response to a show cause order issued by this Court, the trial court issued an "Addendum to Order Entered July 2, 2012," to resolve all remaining issues.  In that Addendum, the trial court held that Husband was, in fact, in willful contempt of the Final Decree by his failure to make alimony payments.  Nevertheless, the trial court ordered that "no punishment be levied upon [Husband] for contempt."  The trial court also specifically

---

[4]Wife's motion for reconsideration was filed on June 26, 2012, which was after the trial court issued its oral ruling but before the written order was entered.

denied Husband's petition to modify the Final Decree. Now that a final order has been entered, we address the issues raised in this appeal. *See* Tenn. R. App. P. 3.

**ISSUE ON APPEAL AND STANDARD OF REVIEW**

On appeal, Wife argues that the trial court erred in concluding that the foreclosure sale of her house satisfied the contingency in the MDA that her mortgage be "paid off in full" so as to terminate Husband's alimony obligation.[5]

The resolution of this issue involves the interpretation of the parties' MDA. An MDA is contractual in nature and is binding between the parties; therefore, the interpretation of the MDA is "subject to the rules governing construction of contracts." *Barnes v. Barnes*, 193 S.W.3d 495, 498 (Tenn. 2006) (citing *Johnson v. Johnson*, 37 S.W.3d 892, 896 (Tenn. 2001); *Honeycutt v. Honeycutt*, 152 S.W.3d 556, 561 (Tenn. Ct. App. 2003)). This Court has recognized that an MDA is a binding contract on the parties and that the parties' contractual rights vest upon the execution of the MDA:

> An MDA's provisions pertaining to the division of the parties' marital estate are essentially contractual, even after they have been judicially approved and incorporated into a divorce decree. *Johnson v. Johnson*, 37 S.W.3d at 896; *Wade v. Wade*, 115 S.W.3d 917, 924 (Tenn. Ct. App. 2002); *Gray v. Estate of Gray*, 993 S.W.2d 59, 63 (Tenn. Ct. App. 1998). The parties may not unilaterally modify an MDA once it has been approved by the trial court. *Johnson v. Johnson*, 37 S.W.3d at 895. In fact, both parties obtain a vested interest in the property allocated to them in the MDA, and neither party may frustrate the other's receipt of his or her vested interest. *Johnson v. Johnson*, 37 S.W.3d at 897.

*Elliott v. Elliott*, 149 S.W.3d 77, 84 (Tenn. Ct. App. 2004). Because "the interpretation of a contract is a matter of law, our review is *de novo* on the record with no presumption of correctness in the trial court's conclusions of law." *Honeycutt*, 152 S.W.3d at 561 (citations omitted).

The "cardinal rule" of contract construction is to ascertain the intent of the parties and effectuate that intent consistent with applicable legal principles. *Frizzell Constr. Co. v. Gatlinburg, LLC*, 9 S.W.3d 79, 85 (Tenn. 1999). This principle is also applied when interpreting an MDA:

---

[5]Wife did not appeal the trial court's damage award based on Husband's arrearage except to the extent that the court terminated Husband's obligation after January 2012.

[O]ur goal is to ascertain and give effect to the parties' intentions. ***Ahern v. Ahern***, 15 S.W.3d 73, 81 (Tenn. 2000). Our search for the parties' intentions must focus on the MDA itself. Each provision of an MDA should be construed in light of the entire MDA, and the language in these provisions should be given its natural and ordinary meaning. We should construe MDAs fairly and reasonably, and we should avoid rewriting these agreements under the guise of "construing" them. ***Duvier v. Duvier***, No. 01A01-9311-CH-00506, 1995 WL 422465, at *3 (Tenn. Ct. App. July 19, 1995) (No Tenn. R. App. P. 11 application filed).

***Elliott***, 149 S.W.3d at 84. When the language of the MDA is plain and unambiguous, courts determine the intent of the parties from the four corners of the contract and enforce its plain terms as written. ***See Int'l Flight Ctr. v. City of Murfreesboro***, 45 S.W.3d 565, 570 (Tenn. Ct. App. 2000). If, however, the contractual terms are ambiguous and the parties' intent cannot be ascertained from simply reading the language, courts then apply established rules of construction. ***Planters Gin Co. v. Federal Compress & Warehouse Co.***, 78 S.W.3d 885, 890 (Tenn. 2002). "A contract [or MDA] is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one." ***Johnson***, 37 S.W.3d at 896 (quoting ***Farmers-Peoples Bank v. Clemmer***, 519 S.W.2d 801, 805 (Tenn. 1975)). An MDA is not ambiguous merely "because the parties may differ as to interpretations of certain of its provisions." ***Id.*** at 896 (quoting ***Cookeville Gynecology & Obstetrics, P.C. v. Southeastern Data Sys., Inc.***, 884 S.W.2d 458, 462 (Tenn. Ct. App. 1994)).

## ANALYSIS

To address the issue Wife raises on appeal, we examine the trial court's interpretation of the parties' MDA. As set forth above, the relevant provisions of the MDA are paragraphs 20 and 21, which grant Wife a vested interest in the marital home and impose an alimony obligation upon Husband. We must give particular scrutiny to Paragraph 21:

> **21. <u>ALIMONY.</u>** Husband shall pay the sum of $314.00 per month to Wife as periodic alimony, with said amount being paid to Wife beginning on the fifth day of the first month after the [MDA] is signed, and continuing on the fifth day of each month thereafter for fifteen years, or until the mortgage on the parties' home, as it exists as of the time the [MDA] is signed, is **<u>paid off in full</u>**. These payments will terminate automatically upon the first to occur of Wife's death or remarriage or Husband's death. . . . This provision is not modifiable by the court. After the amount set out herein has been paid in full, Husband will have no further obligation to Wife for any spousal support, except as set out herein. . . .

(Emphasis added).

On appeal, Wife argues that the trial court's interpretation of the MDA is erroneous because parties could not have intended for this provision to be applied in a way that would allow Husband to willfully fail to make alimony payments, cause Wife to lose her house and home equity in foreclosure proceedings, and then be rewarded for his misconduct. Wife argues that such an unfair and unjust result could not have been in the parties' contemplation when they signed the document. Wife maintains that the trial court erred not only in reaching this conclusion in its July 2, 2012 order, but also in denying her motion to reconsider, in view of the fact that Wife submitted proof that the foreclosure was caused by Husband's failure to make timely alimony payments. Husband did not file a brief on appeal.[6]

The trial court below held, without explanation, that selling the house in foreclosure resulted in the mortgage being "paid off in full" within the meaning of the MDA. We surmise from the trial court's failure to apply the rules of construction to the relevant provisions of the MDA that the trial court felt that the MDA was clear and unambiguous on this point and that its interpretation was consistent with the parties' intent. We must respectfully disagree. In our view, whether the parties intended for the mortgage to be "paid off in full" by virtue of a foreclosure sale — rather than "paid off in full" under the terms of the mortgage — is ambiguous under the circumstances of this case. Wife was granted the marital home in the divorce, and both parties acknowledged in the trial court proceedings that the alimony was intended to provide Wife with the means to pay the mortgage. Had Husband abided by the MDA (and neither party died prematurely and Wife did not remarry), his alimony obligation would have ended in either February 2024, after fifteen years of timely payments to Wife, or in February 2023 after Wife's last scheduled mortgage payment "paid off in full" the mortgage.[7] The MDA does not specifically address the parties' rights and obligations upon a premature sale of the house. Under these circumstances, we find that the alimony provision in the MDA is ambiguous with respect to how a premature sale of the home affects Husband's alimony obligation.

---

[6]Husband was given an opportunity to submit an appellate brief by this Court, but he chose not to do so. Therefore, the case was submitted for decision on the appellate record, Wife's brief, and the oral argument of counsel for Wife.

[7]We are puzzled by the trial court's holding that the alimony in this case is lump sum alimony or alimony *in solido,* in view of the fact that the total amount of alimony owed by Husband can vary depending on which of these contingencies effectuates the termination of his alimony obligation. We have held under similar circumstances that, when the total amount of alimony ultimately due depends on a future contingency that could alter the total amount to be paid, the award lacks the specificity required to constitute alimony *in solido.* ***See McKee v. McKee,*** 655 S.W.2d 164, 166 (Tenn. Ct. App. 1983). ***See also Gonsewski v. Gonsewski,*** 350 S.W.3d 99, 108 (Tenn. 2011). However, the trial court's decision to characterize the alimony as *in solido* instead of *in futuro* was not raised as an issue on appeal, so we will not address it.

Furthermore, the MDA grants Wife the marital home in the divorce, and it appears that she intended to continue to live there. It is undisputed that the alimony was intended to provide Wife the means to pay the mortgage so that she would have a place to live. Allowing Husband to deprive Wife of her home by failing to abide by his obligation under the MDA is contrary to the intent to give Wife a place to live. Thus, an interpretation of the MDA that terminates Husband's alimony obligation upon a foreclosure of the house that was caused by his failure to comply with the MDA is not consonant with the intent of the MDA as a whole.

Most importantly, we agree with Wife that any interpretation of the MDA that would permit Husband to reap a windfall from his willful failure to pay the required alimony would be both unwise policy and contrary to well-settled principles of contract construction. "The words of a contract will be given a reasonable construction, where that is possible, rather than an unreasonable one, and the court will likewise endeavor to give a construction most equitable to the parties, and which will not give one of them an unfair or unreasonable advantage over the other." *Securities Inv. Co. v. White*, 91 S.W.2d 581, 583 (Tenn. Ct. App. 1935) (quoting unreported opinion in the first appeal of the case, which quoted 13 Corpus Juris, 540-541). Accordingly, the "interpretation which evolves the more reasonable and probable contract should be adopted and a construction leading to an absurd result should be avoided." *Id.* at 584; *see also E. O. Bailey & Co. v. Union Planters Title Guar. Co.*, 232 S.W.2d 309, 314 (Tenn. Ct. App. 1949) ("If the language [of a contract] is susceptible of two interpretations, one of which is reasonable and the other unreasonable when tested by the conduct of ordinarily prudent men similarly situated, that will be adopted which is in accord with the justice of the case."). An interpretation of the MDA that would terminate Husband's alimony obligation upon a foreclosure of the house that was caused by his failure to pay the required alimony would be unreasonable, and it would be inequitable to permit Husband to terminate his alimony by virtue of his own misconduct.

The facts in this case as alleged by Wife may be analogized to the familiar situation in which a parent seeks to avoid his or her support obligation by becoming willfully underemployed or unemployed. *See Anderson v. Anderson*, No. 01A01-9603-CV-0018, 1996 WL 465242 at *1 (Tenn. Ct. App. Aug. 16, 1996) ("[T]he judicial system should look with the gravest disfavor upon parents who through their fault or design become underemployed in an effort to evade their legal, natural obligation to support their children."). In both situations, the court should not permit a party to avoid his lawful support obligation by wrongfully causing the circumstance that might otherwise justify termination of the obligation. *See Elliott*, 149 S.W.3d at 84 ("neither party may frustrate the other's receipt of his or her vested interest"). Therefore, for all of these reasons, we must respectfully reject an interpretation of this MDA that would permit Husband to benefit from his own contemptuous conduct.

The trial court below did not permit Wife to put on evidence that the foreclosure sale resulted from Husband's failure to pay alimony. Consequently, we cannot determine at this juncture whether the "paid off in full" contingency in the MDA was actually satisfied in this case. We must remand the case to the trial court for a factual finding on the cause of the foreclosure on the marital home, *i.e.*, whether the foreclosure resulted from Husband's failure to pay alimony or for some other reason, such as Wife's neglect or financial mismanagement. Once that determination is made, the trial court will then be in a position to determine whether the "paid off in full" contingency in the MDA was met in a manner that was reasonable and was consistent with the intent of the parties so as to terminate Husband's alimony obligation.

We observe that, in the proceedings below, the trial court appeared to place the burden on Wife to show that Husband's failure to pay alimony caused the house to go into foreclosure proceedings.[8] The trial court stated at the July 13, 2013 hearing: "I didn't hear any evidence [at the initial June 22, 2012 hearing] to prove to me by a preponderance of the evidence . . . that [Husband's] failure to pay his [alimony] caused the house to go into foreclosure." As the party seeking to terminate his alimony obligation, however, Husband bears the burden of proving the existence of circumstances that would terminate that obligation. ***See Watters v. Watters***, 22 S.W.3d 817, 821 (Tenn. Ct. App. 1999). Therefore, on remand, Husband bears the burden of showing that the "paid off in full" contingency was met, and that his wrongdoing — that is, his willful failure to pay alimony — *was not* the cause of the circumstances that would otherwise result in the termination of his alimony obligation.

With these instructions, we vacate in part the decision of the trial court and remand for further proceedings consistent with this opinion.[9]

Wife requests that this Court award her attorney fees incurred in this appeal. We must consider several factors in exercising our discretion on this issue:

> [I]t is in the sole discretion of this court whether to award attorneys' fees on appeal. As such, when this Court considers whether to award attorney's fees on appeal, we must be mindful of "the ability of the requesting party to pay the accrued fees, the requesting party's success in the appeal, whether the requesting party sought the appeal in good faith, and any other equitable factor that need be considered."

---

[8]We do not have a transcript of the initial June 22, 2012 hearing, so we take this from the trial court's remarks at the subsequent hearing.

[9]We note that, in light of our ruling herein, the trial court is not precluded from addressing Wife's claim for contempt damages if it is established that Husband's failure to pay alimony was willful and that it caused the foreclosure on Wife's house.

*Parris v. Parris*, No. M2006-02068-COA-R3-CV, 2007 WL 2713723, at *13 (Tenn. Ct. App. Sept. 18, 2007) (quoting *Dulin v. Dulin*, No. W2001-02969-COA-R3-CV, 2003 WL 22071454 (Tenn. Ct. App. Sept. 3, 2003)) (other internal citations omitted); *see also Archer v. Archer*, 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995). Given the result of this appeal, the parties' respective financial resources, and the overall equities of the case, we grant Wife's request for attorney fees on appeal. *See In re Jaiden C.W.*, No. M2012-01188-COA-R3-JV, 2013 WL 1501876, at *9 (Tenn. Ct. App. Apr. 11, 2013). On remand, the trial court shall determine the reasonable costs and fees to which Mother is entitled.

## CONCLUSION

The decision of the trial court is vacated in part and remanded for further proceedings consistent with this Opinion. Costs on appeal are to be taxed to Defendant/Appellee Melvin Richard Nichols and his surety, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE