RICHARD P. VAN PELT, Plaintiff in Error, v. P. AND L. FEDERAL CREDIT UNION, Defendant in Error.— 282 S. W. (2d) 794.

Western Section.   July 7, 1955.

Petition for Certiorari denied by Supreme Court, October 7, 1955.

364

W. H. Fisher, of Memphis, for plaintiff in error.

Richard F. Keathley, of Memphis, for defendant in error.

BEJACH, J. This cause involves an appeal by Richard P. Van Pelt, as plaintiff in error in this Court, from a judgment against him in the Circuit Court, for $229.16, which includes $169 principal, $21.97 interest and $38.19 attorney fee, in favor of defendant in error, P. and L. Federal Credit Union,—plaintiff in error, Van Pelt, having been the defendant in the Circuit Court, and the defendant in error, P. and L. Credit Union, having been the plaintiff. For convenience, the parties will be styled as in the lower court, plaintiff and defendant.

The suit originated in Division III of the Court of General Sessions of Shelby County, by warrant issued December 15, 1953, the cause having been set for trial on February 24, 1954. The warrant in question is in words and figures as follows:

"State of Tennessee, County of Shelby

"To Any Lawful Officer to Execute and Return:

"Summon Richard P. Van Pelt to appear before the Court of General Sessions of Shelby County, Tennessee

to be held at the Court rooms of said court in said County on the—day of——19—at—M then and there to answer in a civil action brought by P. & L. Federal Credit Union for balance due on note executed by defendant, which provides for interest at rate of one per cent per month on the unpai*l* balance, and for attorney of 20 per cent of principal and interest due. Plaintiff sues for $169.00 principal, for interest to date, and for attorney fee. Said note is here to the Court shown.

This 15th day of Dec.

"Vance Griffin
Clerk of Court
of General Sessions."

From a judgment against him in the Court of General Sessions, Van Pelt appealed to the Circuit Court of Shelby County where the cause was heard de novo in Division I of the Circuit Court of Shelby County. The cause was tried in the Circuit Court, July 1, 1954. On that date, defendant filed a written plea of usury, which plea is in words and figures, as follows:

"Plea of Usury
Filed July 1, 1954
Vance Griffin, Clerk
T. E. Collins, D. C.

"In The Circuit Court of Shelby County, Tennessee

P & L Federal Credit Union

Vs. No. 5257 T. D.

Richard P. Van Pelt

"Plea of Usury

"Defendant, Van Pelt, for plea says that the note sued on is void for usury appearing on its face, as the note calls for interest at the rate of one per cent a month on unpaid balances; The note for $250.00 calls for 32 weekly payments of $8.00 each, a total of $256.00.

"The warrant, on which the suit is based, also shows usury on its face.

W. H. Fischer, Atty.<br>Richard P. Van Pelt

State of Tennessee
County of Shelby

"Personally appeared before me the undersigned authority Richard P. Van Pelt, who made oath that the foregoing plea is true.

R. P. Van Pelt

Sworn to and subscribed before me
this July 1, 1954

"Vance Griffin, Clerk<br>T. E. Collins, D. C."

On July 1, 1954, the Circuit Judge entered a judgment in favor of the defendant, which judgment appears in the record of this cause; but on July 6, 1954, the plaintiff filed a written motion for a new trial, which motion for a new trial is in words and figures, as follows:

"Motion for New Trial<br>Filed July 6, 1954<br>Vance Griffin, Clerk<br>A. E. Guy, D. C.

"In The Circuit Court of Shelby County, Tennessee

P & L Federal Credit Union

Vs.　　No. 5257　T. D.

Richard P. Van Pelt

"Motion for New Trial

"Comes the plaintiff and files its motion for new trial and for grounds for said motion, says:

"1. The Court erred, as a matter of law, in holding that the note upon which this action was brought was usurious on its face and void, because the plaintiff credit

union operates by virtue of a Federal statute which authorizes the interest rate as set forth in said note.

"2. There was no evidence to support the verdict of the Court.

"Wherefore, the plaintiff moves the Court to set aside the verdict heretofore rendered in this cause and grant plaintiff a new trial.

Richard F. Keathley<br>Attorney for Plaintiff"

This motion for a new trial was submitted to the Court as appears from an order signed by the trial judge. On November 24, 1954, the trial judge granted the motion for a new trial, reversed his former judgment, and entered a judgment in favor of the plaintiff, as stated above. The judgment granting the motion for a new trial, and entering judgment against the defendant is in the words and figures, as follows:

"In the Circuit Court of Shelby<br>County, Tennessee<br>Division One<br>November 24, 1954

P & L Federal Credit Union

VS. No. 5257 T. D.

Richard P. Van Pelt

"Judgment

"This cause came on to be heard upon written motion for new trial filed by plaintiff, written brief of plaintiff, statement of counsel for defendant that he did not desire to file a brief, and it appearing to the Court that the motion should be sustained and judgment heretofore entered in favor of defendant set aside and judgment entered for plaintiff in the amount of Two Hundred twenty nine and $^{16}/_{100}$ths ($229.16) Dollars, which includes One hundred sixty nine and no/$_{100}$ths ($169.00) Dollars principal,

twenty one and $^{97}/_{100}$ths ($21.97) Dollars interest and Thirty eight and $^{19}/_{100}$ths ($38.19) Dollars attorney fee.

"It is, therefore, ordered, adjudged and decreed that motion for new trial of plaintiff be and is hereby sustained and that plaintiff be and is hereby awarded judgment against the defendant for the total sum of Two Hundred Twenty nine and $^{16}/_{100}$ths ($229.16) Dollars and for the costs of this cause, for which let execution issue.

"To all of which defendant, Richard P. Van Pelt, excepts and prays an appeal to the Court of Appeals at Jackson, which appeal is granted upon the execution and filing of a proper appeal bond by the appellant, or in lieu thereof, the execution and filing of his oath in forma pauperis, within the time allow by law.
This 24 day of November, 1954

"Harry Adams, Judge
Minute Book 104 page 225"

The defendant, Van Pelt, filed a pauper's oath and perfected his appeal as was permitted by the judgment of November 24, 1954. No bill of exceptions was filed and made part of the record, however, and this cause is, therefore, before this Court on the technical record, only.

The defendant, as plaintiff in error in this Court, has filed two assignments of error, which are as follows:

"I

"The Court erred in setting aside the first judgment and in entering the second judgment.

"II

"The Court erred in failing to give effect to a credit of $15.20 plainly stated on the note itself."

The principal question presented for decision by this Court, and the only one argued by the defendant, as plaintiff in error, in this Court, either orally before the

Court or on his brief submitted, is whether or not the plaintiff's suit is barred because of usury on the face of the instrument sued on. Profert is made of the note in the summons issued in the Court of General Sessions. The note, itself, or a photostatic copy thereof, is physically inserted in the record; but there being no bill of exceptions, the note can not be considered by this Court. Oyer was not craved, and consequently the note, even though introduced in evidence at the trial, could not become a part of the record, except as same might have been incorporated in a bill of exceptions. Waterhouse v. Sterchi Bros. Furniture Co., 139 Tenn. 117, 122, 201 S. W. 150; Tennessee Procedure in Law Cases, Higgins and Crownover, Sec. 1887; Kelly v. Cannon, 22 Tenn. App. 34, 117 S. W. (2d) 760; Pratt v. Gillespie, 97 Tenn, 217, 36 S. W. 1097. It would have been otherwise, if oyer had been demanded, in which case the note would have become a part of the record. Insurance Co. v. Thornton, 97 Tenn. 1, 40 S. W. 136.

It is insisted on behalf of defendant, however, that the warrant or summons, itself, on which the suit is predicated, issued in the Court of General Sessions, discloses that the note sued on, provides ''for interest at rate of 1% per month on the unpaid balance'' and that that is sufficient to entitle defendant to a judgment of dismissal. The fallacy of defendant's contention in this regard is that the suit having originated in the Court of General Sessions, the pleadings, both in that Court and in the Circuit Court to which the case was taken by appeal, were ore tenus, just as they would have been if the suit had been instituted before a Justice of the Peace. Hancock v. Davidson County, 171 Tenn. 420, 104 S. W. (2d) 824.

Suits in the Court of General Sessions of Shelby Coun-

ty are instituted in that Court just as they would have been before a Justice of the Peace whose jurisdiction the Court of General Sessions supercedes, by a warrant as provided for in Section 10159 of the Code of Tennessee. The particularity required in alleging the cause of action on such warrant is not the same as would be required in a declaration filed in a court of record. It is only necessary that the warrant state briefly a cause of action or some general statement indicating the grounds of action, and containing only sufficient allegations to let the defendant know what charge he is required to meet.

As has been held, both by the Supreme Court, and this Court:

"The warrant is not in lieu of a declaration. It is simply a summons to the defendant to appear and answer, and it may be laid down as a general rule, that whatever may be done in a court of record by proper pleadings and proof, may be done before a Justice of Peace upon the production of the proof alone." Wood v. Hancock, 4 Humph. 465, 23 Tenn. 465; Bodenhamer v. Bodenhamer, 6 Humph. 264, 25 Tenn. 264; Hunt v. Hoppe, 22 Tenn. App. 540, 124 S. W. (2d) 306.

The pleadings being ore tenus, and there being no bill of exceptions, this Court must indulge in the presumption that all necessary pleadings were supplied by the proof or by oral amendment so as to sustain the judgment of the lower court, just as it is required to presume that the *evidence* was sufficient to sustain the judgment where no bill of exceptions has been filed. The Circuit Court had ample authority to permit any amendments necessary in the premises. King v. Breeden, 2 Cold. 455, 42 Tenn. 455; Cannon v. Mathis, 10 Heisk. 575, 57 Tenn. 575; Carruthers History of a Law Suit, 6th Ed., Sec. 77 and Sec.

464; Chrisman v. Metropolitan Life Insurance Co., 178 Tenn. 321, 157 S. W. (2d) 831.

But, it may be asked, as defendant's counsel by necessary implication did ask, "What evidence could possibly have been offered, and what amendments could possibly have been made to the pleadings, whether oral or written, that could offset or destroy the fatality of the language used in the warrant which notifies the defendant that the suit is for "a balance due on note executed by defendant, which provides for interest at rate of 1% per month on the unpaid balance", which language shows that the note sued on was usurious on its face, under the usury laws of Tennessee? The answer to this question is supplied by the brief of the plaintiff, defendant in error in this Court, and we quote from same, as follows:

"Title 12, Section 1752, U.S.C.A. defines a federal credit union as follows:

" 'A Federal credit union is hereby defined as a cooperative association organized in accordance with the provisions of this chapter for the purpose of promoting thrift among its members and creating a source of credit for provident or productive purposes.'

"The succeeding sections of the said Code prescribe the functions of a credit union and the manner of its operation. Section 1757 reads, as follows:

" 'A Federal credit union shall have succession in its corporate name during its existence and shall have power—* * *

" (5) To make loans with maturities not exceeding three years to its members for provident or productive purposes upon such terms and conditions as this chapter and the bylaws provide and as the credit committee may approve, at rates of interest not ex-

ceeding one per centum per month on unpaid balances (inclusive of all charges incident to making the loan) * * * The taking, receiving, reserving, or charging a rate of interest greater than is allowed by this sub-section, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. * * *,

"A credit union is under the supervision of the Bureau of Federal Credit Unions organized in the Department of Health, Education and Welfare.

"Federal credit unions are established by the Federal Government under its broad fiscal powers as provided by the Constitution of the United States. Congress has power to establish national banks and other fiscal agencies, such as federal land banks, federal intermediate credit banks and banks for cooperatives and production credit corporations for the performance of fiscal duties and have been held to be constitutionally created by virtue of their relationship to the fiscal powers of the Federal Government. McCulloch v. Maryland, 4 Wheat. 316, 4 L. Ed. 579; Smith v. Kansas City Title & Trust Co., 255 U. S. 180, 41 S. Ct. 243, 65 L. Ed. 577; Federal Land Bank of St. Paul v. Bismark Lumber Co., 314 U. S. 95, 62 S. Ct. 1, 86 L. Ed. 65.

"Federal Credit Unions are a fiscal agent of the United States. Section 1767 of Title 12, U.S.C.A. reads, as follows:

" 'Each Federal credit union organized under this chapter, when requested by the Secretary of the Treasury, shall act as fiscal agent of the United States and shall perform such services as the Secretary of the Treasury may require in connection

with the collection of taxes and other obligations due the United States and the lending, borrowing, and repayment of money by the United States, including the issue, sale, redemption, or repurchase of bonds, notes, Treasury certificates of indebtedness, or other obligations of the United States * * * any Federal credit union organized under this chapter, when designated for that purpose by the Secretary of the Treasury, shall be a depository of public money.'

"The granting of authority to Federal credit unions to act for the Government in this respect brings them within the creative power of Congress. It, therefore, follows that the same principles and conception applicable to national banks are equally applicable to other Federal fiscal agents, including Federal credit unions.

"If Congress has power to pass an Act, it has power to include such provisions as, in its judgment, will make the Act effective. Schelsinger v. Gilhooly, 189 N. Y. 1, 81 N. E. 619, 624, says:

"Having the power to create national banks, it had the power to strengthen them by a general rule, operative in all the states, and to protect them from the varying policies of the different states with reference to the subject of usury, which otherwise, might undermine their solvency and destroy their usefulness in certain localities. "

"In Central National Bank v. Pratt, 115 Mass. 539, the Court held as follows:

" 'The power of the government to create a bank is supreme; from its nature it includes the power to endow it with all such faculties as are appropriate to accomplish its object. It is clear, as stated in Osburn v. United States Bank, supra [9 Wheat. 738],

that the faculty of lending and dealing in money is an appropriate and necessary faculty for a bank, and that without it the bank would want the capacity to perform its public functions in the most efficient manner. *The rate of interest to be charged for the use of money is a necessary incident of a loan, and the power in Congress to authorize a bank to lend money involves the power to fix the rate of interest and the penalty for taking a greater rate. If a state may fix the rate of interest, it may practically destroy this faculty of the bank.* The power to create a bank includes the power to fix the limitations within which it may exercise its functions and faculties, and to determine the causes for which and the manner in which it may be destroyed. This power vested in Congress is inconsistent with a power in any state or territory to affix penalties upon the bank for taking unlawful interest, or for any other violation of the act of Congress. *We are of the opinion that it was within the constitutional power of Congress to fix the rate of interest which a national bank might take upon a loan of money, and to determine the penalty to be imposed for taking a greater rate; that such power, when exercised by Congress, is exclusive of state legislation.'*

"There are several cases in which suit was brought by a national bank for recovery on a note upon which the interest rate was in excess of that authorized by the state in which the bank was located. Defendant in error submits that the rules, as stated in the foregoing decisions, are applicable to Federal credit unions due to the fact that Congress has established a complete system for the control of Federal credit unions as it has done in the case of national banks. If

Congress has the power to fix a rate of interest to be charged by a national bank, it likewise has power to fix a rate of interest to be charged by a Federal credit union. The Collection of interest is the only income to a Federal credit union, without which it could not be maintained.

"The case of Farmers & Mechanics National Bank v. Dearing, 91 U. S. 29, 23 L. Ed. 196, is a case which originated in the State of New York and it involves the question at hand. The suit was brought by a national bank on a note which was usurious insofar as the New York law was concerned and under the laws of the State of New York, the note was void. However, the Supreme Court of the United States reversed the New York Court and held that the note was not void and that the bank could recover the amount of the debt plus the legal rate of interest. In that case, the Court said:

" 'The National banks organized under the Act [12 U.S.C.A. § 21 et seq.] are instruments designed to be used to aid the Government in administration of an important branch of the public service. They are means appropriate to that end. Of the degree of the necessity which existed for creating them Congress is the sole judge. "Being such means, brought into existence for this purpose * * * the States can exercise no control over them other than insofar as Congress may see proper to permit. Anything beyond this is an abuse, because it is the usurpation of power which a single State cannot give." '

"In deciding this case, the Court further held that, inasmuch as the law in all states is not the same in regards to usurious notes, it would not be in the interest of justice and would be unreasonable to say

that in one state the entire debt would be forfeited and in another, only the usurious interest would be forfeited. The Court said:

" 'The principle is indispensable to the efficiency, independence, and indeed to the beneficial existence of the General Government; otherwise, it would be liable, in the discharge of its most important trusts, to be annoyed and thwarted by the will or caprice of every State in the Union.

" 'There is a reason why the rate of interest should be governed by the law of the State where the bank is situated; but there is none why usury should be visited with the forfeiture of the entire debt of one State, and with no penal consequence whatever in another. This, we think, would be unreasonable and contrary to the manifest interest of Congress.'

"This case has been cited in numerous cases since its decision, including the case of First National Bank of San Jose v. State of California, 262 U. S. 366, 43 S. Ct 602, 603, 67 L. Ed. 1030. In that case, the Court held that when Congress has once constitutionally legislated in an area, state laws on the subject are suspended. The Court said:

" 'This court has ofen pointed out the necessity for protecting federal agencies against interference by state legislation.'

Counsel respectfully directs the Court's attention to another case—McDermott v. State of Wisconsin, 228 U. S. 115, 33 S. Ct. 431, 57 L. Ed. 754, in which the Court said:

" 'A state law on a subject within the domain of Congress must yield to the superior power of Congress; to the extent that it interferes with or frustrates the operation of the act of Congress, a state

statute is void. \* \* \* State legislation cannot impair legislative means provided by Congress in a Federal statute for the enforcement thereof.'

"In 55 Amer. Jur., Usury, Page 330, it is held that a state court is bound by the decisions of the Federal Supreme Court in construing the provisions of the National Bank Act relating to usury."

■ ■ Counsel for plaintiff, as defendant in error in this Court, insists that the decisions relating to the National Bank Act are applicable with equal force to Federal Credit Unions, and we are constrained to agree with him. Obviously, we can and should take judicial notice of the statutes referred to, which provide for Federal Credit Unions; and the decisions, of course, may be considered for whatever value they may have in construing the statutes.

It is insisted, also, by counsel for defendant, that we are not limited to reasoning by analogy in applying the decisions construing the National Bank Act to the statutes providing for federal credit unions. He insists that the decision of our own Supreme Court in the case of Miller v. State, 195 Tenn. 181, 258 S. W. (2d) 751, has expressly approved an interest charge of 1% per month made by a Federal Credit Union. The facts of this case are that Miller was convicted in the Criminal Court of Shelby County for removing mortgaged property beyond the limits of the State, without consent of the mortgagee. One of his contentions, made by way of defense, was, that he could not be guilty of the offense charged because the mortgage or deed of trust in question, and the note secured by same, were void because of the provision in the note for payment of interest at the rate of 1% per month. In disposing of this contention on appeal, the Supreme Court, speaking through Mr. Justice Burnett, said:

"The first two assignments raised the question that the Trust Deed and note which it secured are void for usury. According to the note which is exhibited in the record the interest on the unpaid balance of the indebtedness was to be 1% per month. The officer of the credit union testifies that this 1% as shown on the note included all charges of making the loan and the interest. This being true the note was not usurious because under Code Section 3851 as amended by Chapter 192 of the Public Acts of 1951, credit unions are authorized to collect a total of interest and all other charges not in excess of 1% per month on the unpaid balance." Miller v. State, 195 Tenn. 181, 185, 258 S. W. (2d) 751, 752.

The above quotation may be considered as dictum, because the conviction involved in the case of Miller v. State was reversed on another ground, viz., that the mortgage involved had not been recorded at the time the car, covered by it, was removed from the state. Also, it does not necessarily appear from the reported decision in Miller v. State that the credit union there involved was a Federal Credit Union, although that may, perhaps, be inferred. In any event, the language quoted, even though it be dictum, holds that the testimony of the officer of the credit union, to the effect that the 1% per month as shown on the note, included all charges in making the loan and the interest, was sufficient to bring the case within the provisions of Section 3851 of the Code as amended by Chapter 192 of the Public Acts of 1951, which is:

"A Credit Union may lend to its members at a rate of interest not in excess of the legal rate, and the total of interest and all other charges for a loan shall not exceed one per cent per month on the unpaid balance, or may invest the funds accumulated as provided."

█ If the testimony of the officer of the credit union could bring the provisions of the note involved in the case of Miller v. State within the language of Code Section 3851 as amended, we can see no reason why in the instant case, there being no bill of exceptions, we should not be entitled to indulge in the presumption that testimony of the same character was offered in the trial court. In any event, in the absence of direct authority to the contrary, we are perfectly willing to accept the language quoted from Miller v. State as sufficient authority for this Court to hold on the record before us, that the prima facie indication of usury on the face of the instrument involved was either in fact refuted, or that it may be presumed to have been refuted, because of the absence of a bill of exceptions.

On this subject, in the brief of plaintiff in error, the defendant below, the following appears:

"No bill of exceptions was filed, and though it be assumed evidence was offered that the plaintiff was such a federal union, such evidence would have been, and was wholly irrelevant to the pleadings, that is to say, there was a lack of allegata, and the mere presence of the probata would not avail.

"The plaintiff presented no traversable issue as to its claim to being a union organized under Federal laws."

"No one yet knows, that is neither court nor counsel, whether plaintiff is such a union; no traversable issue has yet been presented on that highly necessary fact."

The fallacy of this contention made by appellant's counsel is, since there is no bill of exceptions, the presumption is that either at the time of the presentation of the motion for a new trial, or at some time prior to the

order granting same and reversing the judgment previously entered, proof of that character had, in fact, been offered.

It follows that assignment of error No. I. Must be overruled.

With reference to assignment of error No. II, as stated above, no argument on this assignment was made by appellant, either before this Court, or in the brief filed in his behalf. Counsel for plaintiff, the defendant in error in this Court, did not, however, ignore this assignment of error. His brief on this subject says:

"Responding to second assignment of error, defendant in error contends that the note had not been made a part of the record, either by bill of exceptions or by the plaintiff in error having craved oyer, as hereinabove set forth, that this Court can not consider any of the evidence presented including the note, and it is presumed that the evidence justified the judgment rendered by the lower court."

We think this is a sufficient answer to plaintiff in error's assignment of error No. II, and same is accordingly, also, overruled.

The net result is that both assignments of error filed by plaintiff in error in this Court, being overruled, the judgment of the lower court in the amount of $229.16 must be affirmed, and judgment entered in this Court for that amount, together with interest thereon from November 24, 1954, the date of same. The costs of this cause are adjudged against the plaintiff in error, Richard P. Van Pelt.

Avery, P. J. (W.S.), and Carney, J., concur.