128

DENNIS H. MAZIKOWSKI and COMMERCE UNION BANK, Plaintiffs in Error, v. CENTRAL MUTUAL INSURANCE COMPANY, Van Wert, Ohio, Defendant in Error. —312 S. W. (2d) 867.

Middle Section. February 28, 1958.

Certiorari denied by Supreme Court May 2, 1958.

William C. Sugg and Henry Denmark Bell, Nashville, for plaintiffs in error.

Arthur Crownover, Jr., Nashville, for defendant in error.

BEJACH, J.   This cause involves an appeal by Dennis H. Mazikowski and the Commerce Union Bank of Nashville, Tennessee, from a judgment of the Honorable Tyree B. Harris, III, sitting as special judge in the Third Circuit Court of Davidson County.   Suit was originally filed in Part 2 of the Court of General Sessions of Davidson County, by Mazikowski alone against the Central Mutual Insurance Company of Van Wert, Ohio, on its Policy No. A-892961, plus the statutory penalty of 25% for refusal, in bad faith, to pay the loss claimed.   At the hearing in the General Sessions Court, the Commerce Union Bank of Nashville, Tennessee, was added as a party plaintiff, and the warrant was amended by adding an additional cause of action for ''breach of promise by defendant to pay the said Mazikowski the sum of $850.00 in settlement of his claim for said loss''.   Judgment was entered in the General Sessions Court in favor of the plaintiffs for $800, from which judgment defendant prayed and perfected its appeal to the Circuit Court of Davidson County, where the cause was tried before Honorable Tyree B. Harris, III, sitting as Special Judge, without the intervention of a jury.   He entered judgment in favor of the defendant except as to $27.24 which had been realized by the defendant as salvage from the sale of the wrecked automobile of plaintiff, Mazikowski, and which amount had, during the trial of the cause, been tendered into court.   From that judgment the plaintiffs, Dennis H. Mazikowski and the Commerce Union Bank, prayed and have perfected their appeal to this Court.

For convenience, the parties will be styled, as in the lower courts, plaintiffs and defendant, or called by their respective names, the defendant being referred to as the Insurance Company.

The plaintiffs made a motion in the Circuit Court for a new trial, although such motion would have been unnecessary, as the cause is before us under the provisions of Section 27-303, T. C. A., which provides:

"All cases tried in a court of record without the intervention of a jury, whether in a court of equity or a court of law and whether tried according to the forms of chancery or according to the forms of law, j u r i s d i c t i o n to review which is in the Court of Appeals, shall be reviewed upon a simple appeal, as now provided in equity cases, and no motion for a new trial shall be necessary, but when the case is tried on oral evidence a bill of exceptions shall be filed and included in the transcript, in all such cases, the hearing of any issue of fact or of law in the appellate court shall be de novo upon the record of the trial court, accompanied by a presumption of the correctness of the judgment or decree of the trial court, unless the preponderance of the evidence is otherwise."

In the instant case, the testimony has been preserved by a bill of exceptions. By stipulation, the cause was heard in the Circuit Court on a transcript of the testimony of the General Sessions Court, and the deposition of James T. Cahoon, Claim Examiner and Subrogation Attorney of the defendant, together with the various exhibits to the testimony of the witnesses.

There is no dispute as to the facts, which are as follows:

Plaintiff, Mazikowski, in February 1956, purchased a 1954 Nash station wagon from one John Head in Mur-

freesboro, Tennessee. This station wagon was covered by a conditional sales contract which was held by plaintiff, Commerce Union Bank. Mazikowski assumed payment of the remaining installments secured by this conditional sales contract. Attached to this policy, which was delivered to the Commerce Union Bank and was never in the possession of Mazikowski, is an endorsement dated February 25, 1956, signed by Mazikowski and countersigned by A. N. Miller, agent, which provides:

"as a condition of the Company's issuance of the policy, the insured consents and agrees with the Company that such insurance as is afforded by the policy applies subject to the following provisions:

"It is understood and agreed that all coverages provided under this policy are declared null and void while the automobile is being operated by any person or persons other than the named insured or members of his immediate household."

Subsequent to his purchase of the Nash station wagon, Mazikowski, who was and is a member of the United States Air Force, was transferred, in connection with his duties, to Kessler Field, Mississippi. While stationed there on May 3, 1956, he loaned the station wagon to a friend and fellow member of the Air Force, one Edward L. Mizell. Mizell drove the automobile to Natchez, Mississippi, where it was struck and demolished by a railroad train. Under date of May 26, 1956, Mazikowski wrote a letter to A. N. Miller, defendant's agent in Murfreesboro, Tennessee, from whom he had purchased his policy, which letter was as follows:

"My car was in a collision with a train at Natchez, Mississippi. It is a total loss, but I can't find my policy with Central Insurance Company. I am enclosing this other policy, which is for liability only, which is no good. I sure would appreciate it very much if you would take care of this matter for me. The car is in Natchez, Mississippi, at the Ford Garage. It is the only big Ford garage there. It is a 1954 Rambler.

I would appreciate this very much if this matter can be taken care of immediately and am also appreciative for your kindness."

On receipt of this letter, A. N. Miller wrote a letter to the defendant at its home office in Van Wert, Ohio, in which letter Mazikowski's letter is quoted verbatim. On receipt of this communication, one of defendant's claim examiners referred the claim to an adjuster in Natchez, Mississippi. This adjuster, a Mr. Charles W. Garner, who was employed by Franklin and Childress, Adjusters, of Jackson, Mississippi, made a prompt investigation and submitted a detailed report to the defendant at its home office. As set out in this report, the bailee, Mizell, was driving the car in Natchez when his progress was halted by the presence of a train across a railway crossing; whereupon Mizell attempted to go around the train by driving down the railroad tracks, and in so doing, he somehow got the automobile into a position between two railroad cars on adjacent and converging tracks. Mizell turned on the lights dim, turned on the radio, and made himself comfortable in the parked vehicle until such time as one of the trains should move and thereby permit him to proceed. When this did occur, the automobile

was caught between two railroad cars and mashed to pieces.

Mr. Garner, the adjuster who had been thus employed by the defendant, entered into negotiations with plaintiff Mazikowski, which negotiations were conducted partly by correspondence and partly by long distance telephone conversations. Having ascertained that the probable fair value of Mazikowski's automobile prior to the accident was $1,000, he offered to settle with Mazikowski on the basis of $900, which with $50 deductible as provided for in the policy, would result in payment to Mazikowski of $850, and transfer of the wrecked automobile to defendant for whatever salvage it could recover therefrom. Mazikowski accepted this offer; whereupon Garner forwarded to him a form for making proof of loss. The form furnished contained a statement that the furnishing of such form did not waive any rights of the insurance company, but the letter which forwarded same to Mazikowski said that upon his proper execution of the document, he would "be entitled" to payment of $850 from the defendant. This proof of loss contained, on its reverse side, a release agreement and subrogation agreement whereby Mazikowski, by signing, acknowledged receipt of $850 from the defendant, in consideration of which he released defendant from further liability and assigned his rights to proceed against third parties to recover for the damage to the Nash automobile. On June 27, 1956, the adjuster mailed the proof of loss, release and subrogation agreement to the office of defendant, and on July 3, 1956, the defendant issued a check in the amount of $850 payable to the order of Dennis H. Mazikowski and Commerce Union Bank, Nashville, Tennessee. This check was mailed to the Commerce Union

Bank at Nashville, Tennessee and defendant's file was thereupon marked "Closed". About ten days later, on July 12, 1956, defendant wrote a letter to its adjuster in Mississippi instructing him to refer the subrogation claim to a lawyer in Natchez. Thereafter, under date of July 18, 1956, defendant received a letter from its Mississippi adjuster advising that he had sold what was left of the wrecked automobile for $27.24, with a check for that amount enclosed.

In the meantime, plaintiff, Commerce Union Bank, had received defendant's check for $850 and mailed same to plaintiff, Mazikowski, for his endorsement. Mazikowski endorsed same and mailed it back to the Commerce Union Bank, which in turn endorsed the check, deposited it, and credited Mazikowski's account. The check was not paid, however, because, on or about July 24, 1956, defendant stopped payment on it, and by letter dated July 24, 1956, defendant's adjuster notified plaintiff, Mazikowski, that defendant had refused to accept his proof of loss, for the reason that there was no coverage under the terms of the endorsement.

According to the testimony of James P. Cahoon, defendant's Claims Examiner and Subrogation Attorney, the defendant had a rather complex system of processing claims. Under this system, its claims are handled by a number of different employees. Apparently, one of the claims examiners failed to detect the possibility that the endorsement might have some bearing on the claim and therefore failed, at the time Mazikowski's claim first came to the claim department, to make a proper notation on a document designated "daily report". It seems that the claim examiner who first handles the file and makes

up the "daily report" is not necessarily the same one as the examiner who ultimately approves or disapproves payment of the claim. Apparently, the particular claims examiner who decided to pay Mazikowski's claim acted on the "daily report" which failed to disclose the existence of the restrictive endorsement on the policy.

After the claim had been approved, the check for $850 issued, and the file stamped "Closed", the file was delivered to defendant's Automobile Underwriting Department "for review at their leisure of the desirability of remaining on the risk". With the entire file before him, one of defendant's underwriters noticed the endorsement and decided that the claim had been improvidently settled. Thereafter, in an effort to undo or overcome what had already occurred, the defendant stopped payment on the check and notified plaintiffs, the adjuster, the agent, and the subrogation attorney that it was denying coverage.

On proof of the facts, as stated above, the special judge of the Circuit Court ruled that plaintiff, Commerce Union Bank, was entitled to recover nothing and that plaintiff, Mazikowski, was entitled to recover only $27.24, the proceeds of the sale of his wrecked automobile, which amount had been paid into court during the trial. The costs were adjudged against the defendant. It is from this judgment that both plaintiffs have prayed and perfected their appeal to this Court.

As appellants, plaintiffs have filed in this Court five assignments of error, which are as follows:

"Assignments of Error

"The judgment below is erroneous because of the things and matters made the basis of the following assignments of error:

"I.

"The Court erred in overruling the first ground of plaintiffs' motion for a new trial and in failing to set aside its judgment and render judgment for plaintiffs for $850.00, which ground is as follows:

" '1. The preponderance of the evidence established that the defendant waived its right to deny liability on its insurance policy.' (Tr. 5)

"II.

"The Court erred in overruling the second ground of plaintiffs' motion for a new trial and in failing to set aside its judgment and render judgment for plaintiffs for $850.00, which ground was as follows:

" '2. From the preponderance of the evidence the defendant should be estopped to deny liability on its insurance policy.' (Tr. 5)

"III.

"The Court erred in overruling the third and fourth grounds of plaintiffs' motion for a new trial and in failing to set aside its judgment and render judgment for plaintiffs for $850.00, which grounds are as follows:

" '3. The verdict in the amount of $27.24 was inadequate.

" '4. The preponderance of the evidence established a settlement agreement under the terms of which the defendant is indebted to plaintiffs in the amount of $850.00.' (Tr. 5)

"IV.

"The Court erred in overruling the fifth ground of plaintiffs' motion for a new trial and in failing to set aside its judgment and render judgment for plaintiffs for $850.00, which ground is as follows:

" '5. The Court had no jurisdiction to order a recision and restitution.' (Tr. 5)

"V.

"The Court erred in overruling the sixth ground of plaintiffs' motion for a new trial and in failing to set aside its judgment and render judgment for plaintiffs for $850.00, which ground is as follows:

" '6. The judgment is contrary to the law applicable to the case.' (Tr. 5)

"Particularly, under this assignment, the Court is charged with error in holding that the automobile was 'being operated' by the bailee at the time of the loss so as to effect a forfeiture of the insurance contract."

It will not be necessary, in our opinion, to separately discuss the above quoted assignments of error. The outcome of this law suit turns entirely, in our opinion, on what effect, if any, the restrictive endorsement attached to the policy of insurance should be given, under the facts and circumstances of this particular law suit.

■■ There can be no doubt, that if on receipt of Mazikowski's claim, the insurance company had promptly denied liability because of this endorsement, it would have been entitled to a judgment in its favor. That being our view of the case, but for the amendment to the warrant granted at the hearing in the General Sessions Court, the judgment of that Court should have been in favor of the defendant. The amendment was granted, however; and that, in our opinion, converted the claim of plaintiffs into a suit on the contract of settlement for $850 which had been entered into, on behalf of defendant, by its adjuster in Mississippi, and which contract of settlement it ratified and approved when it issued the check for $850 payable to plaintiffs. Its effort to avoid liability by stopping payment on the check, in our opinion, came too late.

■ It is contended by able counsel for the defendant that the action of plaintiff, Mazikowski, as set out in the original warrant was an action of debt, claimed for money due according to the terms of defendant's obligation to pay; and that, even after the amendment was allowed, plaintiffs' cause of action was indebitatus assumpsit, which is merely a different form of the same action. We cannot agree to this contention. This suit having originated in the Court of General Sessions, the pleadings were ore tenus. In that situation, both in the General Sessions Court and also in the Circuit Court, to which the case was appealed, plaintiffs were entitled to have rendered in their favor any judgment which the proof warranted. It is true of the General Sessions Court of Davidson County, as was said by this Court (Western Section), referring to the General Sessions Court of Shelby County, in the case of Van Pelt v. P. &

L. Federal Credit Union, 39 Tenn. App. 363, 370-371, 282 S. W. (2d) 794, 797:

"Suits in the Court of General Sessions of Shelby County are instituted in that Court just as they would have been before a Justice of the Peace whose jurisdiction the Court of General Sessions supercedes, by a warrant as provided for in Section 10159 of the Code of Tennessee. The particularity required in alleging the cause of action on such warrant is not the same as would be required in a declaration filed in a court of record. It is only necessary that the warrant state briefly a cause of action or some general statement indicating the grounds of action, and containing only sufficient allegations to let the defendant know what charge he is required to meet.

"As has been held, both by the Supreme Court, and this Court:

" 'The warrant is not in lieu of a declaration. It is simply a summons to the defendant to appear and answer, and it may be laid down as a general rule, that whatever may be done in a court of record by proper pleadings and proof, may be done before a Justice of the Peace upon the production of the proof alone.' Wood v. Hancock, 4 Humph. 465, 23 Tenn. 465; Bodenhamer v. Bodenhamer, 6 Humph. 264, 25 Tenn. 264; Hunt v. Hoppe, 22 Tenn. App. 540, 124 S. W. (2d) 306.''

██ The contention set out in appellants' brief, that plaintiffs are entitled to recover under the terms of the policy, notwithstanding the restrictive endorsement, because at the time of the damage to the automobile it was

not being operated by anyone but was standing still, is, in our opinion, without merit. On the other hand, their contention that after defendant through its adjuster had taken possession of and sold plaintiff Mazikowski's wrecked automobile, it should not be permitted to rescind the agreement of settlement already made, is, in our opinion, unanswerable. The Circuit Court's judgment in favor of Mazikowski for $27.24, the amount realized by defendant from the sale of his automobile, is not, in our opinion, an adequate substitute for his right to have the automobile restored to him. Volume 12, Am. Jur., in the treatise on Contracts, at Section 452, page 1034, says:

"According to some decisions, a party's inability to restore the consideration will not relieve him from the necessity of doing so. If the parties cannot be put back in statu quo, a contract can be rescinded only where the clearest and strongest equity imperatively demands it."

In the instant case, there is in our opinion, no strong or clear equity that demands recision of defendant's contract of settlement under the terms of which it was obligated to pay $850. On the contrary, we think the equities are with the plaintiffs and that defendant should be required to pay the $850 agreed to in the contract of settlement. As was held by this Court and the Supreme Court in the case of Securities Investment Company v. White, 19 Tenn. App. 540, 555, 91 S. W. (2d) 581, at the very least, the inability of the defendant to restore the automobile in the condition in which it was prior to the settlement agreement, would make defendant guilty of conversion. In the case of Standard Grocery Co. v. National Fire Ins. Co., 161 Tenn. 640, 32 S. W. (2d) 1023,

1025, the Supreme Court held, in an opinion written by Mr. Justice McKinney, that a sale of salvaged stock by a fire insurance company did not prevent the insurance company from resisting liability on its policy, because it had been agreed by the insured that such sale might be made without prejudice to the rights of the insurance company. That opinion clearly indicates, however, that but for such agreement the result would have been different. From it, we quote:

"If the adjuster had gone ahead and sold the salvaged goods without the consent of complainant, and without reserving the right of the company to contest its liability on the policy, we would have a different case."

In the instant case, there was no agreement about the sale of the wrecked automobile, except as a part of the agreement of settlement for $850, and in making that agreement, the insurance company certainly made no reservation of right to contest plaintiffs' claim.

It is suggested in the briefs filed in this Court, that this case was tried in the Circuit Court as if it were an equity case in which the insurance company was undertaking, on the ground of mistake, to rescind the contract of settlement which it had made. On behalf of plaintiffs it is contended, with which contention we agree, that the General Sessions Court of Davidson County and the Circuit Court of Davidson County to which the case was appealed, could not properly dispose of this cause on that basis, because the equitable jurisdiction of these courts was limited to the amount of $50.00. T. C. A., Sec. 19-301 and Sec. 19-412; Private Acts of 1937, Chapter 12, Sec. 2. On behalf of defendant,

it is contended by its counsel, on the authority of New York Life Insurance Co. v. Nashville Trust Co., 200 Tenn. 513, 292 S. W. (2d) 749, that even if the check for $850 issued by defendant had been paid, the Insurance Company could on the ground of mistake of fact, recover the proceeds from plaintiffs. We cannot agree with this contention. The New York Life Insurance Company case was decided on the basis of a holding that the insured had been guilty of extrinsic fraud. But, even if it were true that, if defendant had paid the check for $850, it could, in a court of equity, recover the proceeds of same, that would not entitle defendant to successfully resist the present case. Both the General Sessions Court and the Circuit Court are law courts, and defendant was entitled to interpose only such defenses as are permissible in courts of law. The contention of able counsel for the defendant that Section 16-511, T. C. A., authorized the Circuit Court to hear and dispose of this case as if it were an equity suit, is likewise without merit. In the first place, the suit was not brought in the Circuit Court, but in the General Sessions Court; and, in the second place, the plaintiffs were not seeking equitable relief, but only to have their legal rights adjudged.

Judgment will be entered in this Court reversing the judgment of the Circuit Court of Davidson County and entering judgment here in favor of plaintiffs Dennis H. Mazikowski and Commerce Union Bank against the defendant, Central Mutual Insurance Company, for $850, together with interest thereon from September 25, 1956, the date on which suit was instituted in the General Sessions Court, together with all of the costs of this cause.

Felts and Shriver, JJ., concur.