Lee Roy McANALLY, Plaintiff in Error,

v.

IDEAL FEDERAL CREDIT UNION, Defendant in Error.

No. 41367.

Supreme Court of Oklahoma.

May 9, 1967.

Carloss Wadlington, Ada, for plaintiff in error.

Lewis M. Watson, Ada, for defendant in error.

BLACKBIRD, Justice.

The principal question involved in this appeal is whether certain Oklahoma statutes with reference to usury apply to the interest charges on a loan made by a Federal Credit Union to one of its members.

Plaintiff in error, hereinafter referred to as "defendant", was an employee of the Ideal Cement Company of Ada, and, along with other employees of that company, was a member of, and shareholder in, defendant in error, a Federal Credit Union, hereinafter referred to as "plaintiff", when, on August 17, 1959, he obtained a loan from plaintiff, evidenced by a promissory note in the amount of $659.12, secured by a chattel mortgage on his pickup truck, executed and delivered to plaintiff the same day. The note provided that the obligation should draw interest at the rate of 1% per month on the unpaid balance; and the principal and interest was payable in 24 monthly installments of $31.00 each, beginning September 15, 1959.

Thereafter, defendant defaulted in the payment of the note, his employment with Ideal Cement Company terminated and he was later given credit on the note for all except $10.80 that remained in his credit union shares account.

In May, 1964, plaintiff commenced this action against defendant in the justice of the peace court to recover, on its first cause of action, a balance of $90.11, allegedly due on the note (after defendant was credited with the $10.80 remaining in his shares account) plus interest at the rate of 1% per month until paid, and attorneys fees of $18.02.

In a second cause of action, plaintiff sought foreclosure of the above mentioned chattel mortgage on the pickup truck.

At the trial in the justice of the peace court during June, 1964, after plaintiff's evidence was introduced and it rested, said court entered judgment for defendant dismissing the action, upon defendant's motion, on the ground that the interest rate charged on the loan involved was greater than the 10% permitted by Oklahoma law. Thereafter, plaintiff appealed to the District Court, where, after waiver of a jury, the case was tried de novo by said court, hereinafter referred to as the "trial court."

At the latter trial, it was stipulated that plaintiff was a Federal Credit Union organized and maintained as provided in (the Act of Congress appearing in) Tit. 12 U.S. C.A., Chap. 14. At the close of plaintiff's evidence, defendant demurred thereto, on the ground that the action could not be maintained, and should be dismissed, under Tit. 15 O.S.1961, § 271. The court overruled the demurrer, and defendant, after being allowed an exception to said ruling, introduced evidence on his own behalf in an attempt to show that if the balance to his credit in his shares account had been promptly applied to his loan indebtedness, after he requested that it be done, there would have been nothing due on the loan when the suit was commenced.

At the close of all of the evidence the trial court took the case under advisement, directing both counsel to submit briefs on the question of whether the rate of interest plaintiff charged defendant on the loan is usury, and whether such an action may be maintained in Oklahoma.

Thereafter, upon further consideration, the court entered judgment for plaintiff as prayed for in its first cause of action, but, as to its second cause of action, found that the defendant had disposed of the pickup truck prior to the trial, and that foreclosure of the chattel mortgage thereon should not be ordered. After the overruling of his motion for a new trial, defendant lodged the present appeal on original record.

In the first two propositions defendant urges for reversal of the trial court's judgment, he contends that the 1% per month which plaintiff charged him as interest on the subject loan is usury under Art. 14, § 2 of the Oklahoma Constitution and Tit. 15 O.S.1961, § 266; and that the note, evidencing the loan, is usurious on its face under the criterion set forth in this court's recent opinion in Hollamon v. First State Bank of Stroud, Okl., 389 P.2d 352.

On the other hand, plaintiff, in its first proposition, denies that its interest rate of 1% per month on the unpaid balance was a usurious one under Oklahoma law (at least before defendant's default), and, in its second proposition, takes the position that, regardless of this, since it is a Federal Credit Union authorized by Federal law, and that law specifically authorizes the charging of that rate of interest, Oklahoma law is not controlling—in effect, that it is even immaterial. Plaintiff cites Van Pelt v. P and L Federal Credit Union, 39 Tenn. App. 363, 282 S.W.2d 794, upholding an argument seeking application of the same "conflicts of laws" rule to Federal Credit Unions that the courts have applied to national banks, where conflicts between the Federal laws, and State laws, exist in matters pertaining to usury.

The Federal Credit Union Act was originally enacted by the United States Congress in 1934. See 48 Stat. 1216, Tit. 12 U.S.C.A. § 1751. By subsequent amend-

ments to said Act with reference to the powers of such Unions, they have been specifically authorized by Congress (66 Stat. 70, Tit. 12 U.S.C.A. § 1757) among other powers:

"(5) To make loans with maturities not exceeding three years to its members for provident or productive purposes upon such terms and conditions as this chapter and the bylaws provide and as the credit committee may approve, at rates of interest not exceeding 1 per centum per month on unpaid balances (inclusive of all charges incident to making the loan); * * *

* * * * * *

The taking, receiving, reserving, or charging a rate of interest greater than is allowed by this subsection, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. In case the greater rate of interest has been paid the person by whom it has been paid, or his legal representatives, may recover back, in an action in the nature of an action of debt, the entire amount of interest thus paid from the credit union taking or receiving the same: Provided, That such action is commenced within two years from the time the usurious transaction occurred.

* * *."

In the early case of Farmers' & Mechanics' National Bank of Buffalo v. Dearing, 91 U.S. 29, 23 L.Ed. 196, the court held:

"1. The States can exercise no control over national banks, nor in anywise affect their operation, except in so far as Congress may see proper to permit.

"2. The discount of a note by a national bank, at a greater rate of interest than is allowed by the statute of the State where such bank is located does not render it liable to the penalty for usury provided by the state statute.

* * *."

The rationale of such decisions was clearly forecast by the Supreme Court of Massachusetts in the early case of Central National Bank v. Pratt, 115 Mass. 539, in which the court said (at p. 546):

"The power of the government to create a bank is supreme; from its nature it includes the power to endow it with all such faculties as are appropriate to accomplish its object. It is clear, as stated in Osborn v. United States Bank [9 Wheat. 738], supra, that the faculty of lending and dealing in money is an appropriate and necessary faculty for a bank, and that without it the bank would want the capacity to perform its public functions in the most efficient manner. The rate of interest to be charged for the use of money is a necessary incident of a loan, and the power in Congress to authorize a bank to lend money involves the power to fix the rate of interest and the penalty for taking a greater rate. If a state may fix the rate of interest, it may practically destroy this faculty of the bank. The power to create a bank includes the power to fix the limitations within which it may exercise its functions and faculties, and to determine the causes for which and the manner in which it may be destroyed. This power vested in Congress is inconsistent with a power in any state or territory to affix penalties upon the bank for taking unlawful interest, or for any other violation of the Act of Congress. We are of the opinion that it was within the constitutional power of Congress to fix the rate of interest which a national bank might take upon a loan of money, and to determine the penalty to be imposed for taking a greater rate; that *such power, when exercised by Congress, is exclusive of state legislation;* that the provision of the thirtieth section of the Act of Congress we are considering, imposing a penalty for taking unlawful interest, applies as well to banks established in states where a rate of

interest is fixed by law, as to banks in states where no rate is fixed, and therefore that the laws of New York imposing penalties for taking usury do not apply to national banks established within its limits." (Emphasis added.)

See also First National Bank v. Childs, 133 Mass. 248, and other cases cited in Rockland-Atlas Nat. Bank of Boston v. Murphy, 329 Mass. 755, 110 N.E.2d 638, 639.

This court has followed the first cited U. S. Supreme Court opinion in a long line of cases beginning with Pauls Valley Nat. Bank v. Mitchell, 55 Okl. 170, 154 P. 1188. In Brooklyn Jenapo Federal Credit Union v. Schucher, 41 Misc.2d 368, 245 N.Y.S.2d 637 (aff. 23 A.D.2d 720, 258 N.Y.S.2d 348) the court said:

> "The plaintiff is a loan association created under Federal statute (12 U.S.C.A., § 1751 et seq.), and *is not subject to the usury laws of the state in which its office is located. This is the rule applied in cases involving national banks similarly organized under Federal law (12 U.S. C.A., § 21 et seq.) and the Court discerns no reason why a different principle should be applied to Federal Credit Unions* (Cf. Van Pelt v. P. & L. Federal Credit Union, 39 Tenn.App. 363, 282 S.W. 2d 794). When dealing with transactions concerning national banks, the courts have consistently held that the Federal law is controlling since the borrower's rights are created and his remedies prescribed by that law. (Rockland-Atlas National Bank of Boston v. Murphy, 329 Mass. 755, 110 N.E.2d 638, and cases cited at 639). The Federal Credit Union Act authorizes credit unions to charge interest at rates not exceeding 1% per month, on unpaid balances, inclusive of all charges incident to making the loan (12 U.S.C.A. § 1757, subd. (5) * * *" (Emphasis added).

■ We, like the New York court, can see no valid reason for following a different rule with reference to Federal Credit Unions than has been the long-established one applying to national banks with reference to conflicts between Federal and State laws in matters pertaining to usury. Therefore, we herein approve of, and follow, Brooklyn Jenapo Federal Credit Union v. Schucher, supra. It, of course, should be recognized that there is no conflict between our State Law and the National Bank Act as to what rate of interest constitutes "usury," because the 30th section of that Act of Congress specifically authorizes national banks to charge "interest at the rate lowed by the laws of the State, * * *" where the bank is located and no more (see Farmers' and Merchants' Nat. Bank of Buffalo v. Dearing, supra); but, as to matters concerning which our statutes *do* conflict with that Act, such as the penalty for usury and the debtor's right to recover it in the same action in which he is sued on the debt, this Court has always held that the Federal Law controls. In addition to Pauls Valley Nat. Bank v. Mitchell, supra, see First Nat. Bank of Wellston v. Green, 56 Okl. 698, 155 P. 502, First Nat. Bank of Stigler v. Howard, 59 Okl. 134, 158 P. 438, and numerous other cases cited in Note 3 under 15 O.S.A. § 267. Since the Federal Credit Union Act, supra, does not have a provision like the above quoted provision of the National Bank Act, but instead, specifically authorizes Federal Credit Unions to charge a rate different than the one allowable under our State Constitution and statutes, that Federal Act must govern. And, we so hold. Therefore, the defendant's arguments under his first two propositions demonstrate no ground for reversing the trial court's judgment.

■ Under his third proposition, defendant argues, in substance, that "regardless of the usury question * * *" he was entitled to judgment on the ground that, if the balance in his shares account had been applied to the balance due on his note, as early as it should have been, the latter would have been satisfied "two years and a half before" any such credit was effected. This argument can only refer to his own testimony to the effect that he, along with a large number of Ideal Cement Company

employees were "laid off" their jobs the latter part of January, 1959, and that thereafter he requested Mr. Laxton, predecessor to Mr. Sullivan, plaintiff's Secretary, to apply to his loan indebtedness the amount then to his credit in his shares account. A portion of Mr. Sullivan's testimony, on cross examination, was as follows:

"Q * * * when do you think was the first time you ever heard the man contend that he didn't get credit for the shares?

"A Well, it was about two months before I did give him credit for them.

"Q That was the first time he ever asked for it?

"A Yes, sir."

(Sullivan's explanation of the two-months' lapse of time between defendant's request that the money-application be made, and the date it was effected, was that he had to wait until he was authorized to do it at a subsequent meeting of plaintiff's "Board").

The representations in defendant's brief that plaintiff's evidence contains no denial that his request that such a credit be given was made to Mr. Laxton before Mr. Sullivan became plaintiff's secretary, might depend, to some extent, on how Mr. Sullivan's testimony is interpreted. Furthermore, defendant's testimony, in so far as it conflicts with plaintiff's evidence was rather vague, indefinite and equivocal; and it fails to establish, with any degree of definiteness, the earliest date that his claimed request was made. Furthermore, his presentation fails to establish how much less, if any, his loan indebtedness would have been, when this action was commenced, if such request had been complied with, when first made. Be such considerations as they may, however, it is not our prerogative to weigh the evidence here and render an opinion, independent of the trial court's judgment, as to the preponderance thereof. Defendant's only challenge of the evidence, after both parties had rested, was a renewal of a special demurrer directed only at the questions pertaining to usury, and did not challenge the evidence's sufficiency on the questions of fact now considered. Since the case was tried as one for the recovery of money, with no foreclosure of the chattel mortgage being attempted, the sufficiency of the evidence to support the judgment must be governed by the same appellate rule that applies to actions of legal cognizance in which jury trial is waived, and the evidence's sufficiency on questions of fact is not challenged after it has all been introduced and prior to their submission to the court. See Rucker v. Republic Supply Co., Okl., 415 P.2d 951, and Givens v. Western Paving Co., Okl., 261 P.2d 450. In the last cited case, this court said (pp. 451, 452):

"In jury-waived civil actions trial court's findings have force and effect of * * * (a) jury's verdict and when finding is general it is finding of every specific thing necessary to be found sustaining general judgment and such judgment will not be disturbed on appeal in the absence of legal errors, if there is any competent evidence reasonably tending to support the trial court's conclusion. The credibility of the various witnesses and weight and value to be given to their testimony is for the jury or for the trial court on waiver of a jury, and conclusions there reached will not be disturbed on appeal, unless appearing clearly to be based upon caprice or to be without any reasonable foundation. Lowe v. Hickory, 176 Okl. 426, 55 P.2d 769."

■ After thoroughly examining the testimony of plaintiff's witness, Mr. Sullivan, and the documentary evidence introduced by plaintiff, we have concluded that there is competent evidence reasonably tending to support the trial court's judgment as it pertains to defendant's contention that if the balance in his shares account had been timely and properly credited to his loan indebtedness, the latter would have been defrayed, or liquidated.

**328**

'As none of the arguments for reversing the trial court's judgment demonstrate error therein, said judgment is hereby affirmed.

JACKSON, C. J., IRWIN, V. C. J., and DAVISON, WILLIAMS, BERRY and LAVENDER, JJ., concur.

McINERNEY, J., concurs in result.

HODGES, J., dissents.