Adolfo V. CARREON, et ux., Appellants,

v.

SAN ANTONIO CITY EMPLOYEES
FEDERAL CREDIT
UNION, Appellee.

No. 5970.

Court of Civil Appeals of Texas,
Waco.

Aug. 16, 1979.

Darby Riley, San Antonio, for appellants.

Robert P. Sims, Sims & Sims, Inc., San Antonio, Joe B. Harrison, Jess C. Rickman, III, Wynne & Jaffe, Dallas, for appellee.

Walton P. Bondies, Jr., Dallas, Texas Credit Union League, for amicus curiae.

HALL, Justice.

Plaintiffs Adolfo V. Carreon and wife Mary Carreon brought this suit against defendant San Antonio City Employees Federal Credit Union alleging that Mr. Carreon is a member of defendant federal credit union; that during the period from July 30, 1974, to May 6, 1977, he was the maker of seven promissory notes payable to defendant under which he borrowed money; that during the same term he was also comaker of the notes of several of his fellow city employees; that at least four times since 1975, he has been charged for the default of his fellow employees on their notes; that in each of the transactions listed above defendant violated the provisions of Chapter four of the Texas Consumer Credit and Consumer Protection Act (Tex.Civ.St. 5069 —4.01 through 5069—4.04) in ten particulars by failing to make certain enumerated disclosures required under Article 5069—4.-03, by contracting for default charges in excess of those allowed under Article 5069 —4.01(5), by failing to credit the accounts upon renewal with unearned interest as required by Article 5069—4.01(6) and unearned insurance as required by Article 5069—4.02(6), and by making charges not authorized by Article 5069—4.01(7) in determining the amount of the cash advance. Plaintiffs sought the penalties prescribed in Article 5069—8.01 for the alleged violations.

Defendant moved for judgment on the pleadings asserting that as a matter of law defendant was not subject to the provisions of Chapter four of the Texas Credit Code, and that, accordingly, plaintiffs had not stated a cause of action against defendant. The trial court sustained defendant's motion and rendered judgment, in effect, that plaintiffs take nothing. Plaintiffs appeal. We affirm the judgment.

By Acts 1967, 60th Leg., p. 608, ch. 274, Title 79 of the Texas Civil Statutes was substantially revised with the enactment of a new Title 79, containing several chapters, dealing with the subjects of consumer credit, interest rates, and consumer protection. In Art. 1.02 of Chapter one of the Act, the

maximum rate of interest permitted in Texas was set at ten percent per annum "unless otherwise authorized by law." In subsequent chapters, including Chapter four in question in this case, interest and charges in excess of ten percent per annum were authorized provided that certain disclosures and other duties set forth were met by the creditor. Chapter four, codified in Vernon's Tex.Civ.St. as Articles 5069—4.01 through 5069—4.04, provides in pertinent parts as follows:

"Art. 5069—4.01. Installment loans authorized.

"(1) Any bank, savings and loan association or credit union doing business under the laws of this State or of the United States, and any person licensed to do business under the provisions of Chapter 3 of this Subtitle relating to regulated loans may contract for and receive on any loan made under the authority of this Chapter repayable in consecutive monthly installments, substantially equal in amount, an add-on interest charge of Eight Dollars per One Hundred Dollars per annum for the full term of the loan contract.

(2) Interest authorized in Section (1) of this Article shall be computed on the cash advance at the time the loan is made for the full term of the loan contract notwithstanding the requirement of the loan contract for payment in substantially equal regular installments and shall be computed on the basis of a full month for any fractional period in excess of fifteen days. Interest authorized by Section (1) of this Article shall be added to the cash advance and said sum shall be the amount of the loan.

(3) Notwithstanding the foregoing, a lender may make loans which require repayment in irregular or unequal installments and may compute, contract for, charge or receive interest charges under any method or formula different from that prescribed in Section (1) of this Article, provided the total interest charge as scheduled shall not produce an interest yield in excess of that permitted under Section (1) of this Article for the time the loan is scheduled to be outstanding.

(4) Notwithstanding any other provision of this Chapter, a borrower and a lender may enter into a written agreement pursuant to which one or more loans or advances to or for the account of the borrower may be made from time to time. The agreement shall contain the date of the agreement; the name and address of each borrower and of the lender; the nature of the security, if any, the charges in addition to interest contracted for as authorized by this Chapter; and the interest for default and deferment authorized by this Chapter and shall be signed by the parties. A copy of the agreement shall be delivered to the borrower . . ."

Article 5069—4.03 sets forth a list of disclosures and other duties to be met by the lender "When a loan is made *under the authority of this Chapter*." (Emphasis added).

Article 5069—4.01 purports to authorize defendant federal credit union to make an add-on interest charge of 16% per annum, in paragraphs (1) and (2) thereof. However, under the terms of 12 U.S.C.A. § 1757(5)(A)(vi) the rate of interest charged by federal credit unions must not exceed "1 per centum per month on the unpaid balance inclusive of all service charges." It is clear, therefore, that regardless of the fact that "credit unions" are named in the opening sentence of Article 5069—4.01, federal credit unions may not charge the 16% interest rate authorized therein. Plaintiffs agree. They argue that the Legislature did not intend by the enactment of the statute to authorize federal credit unions to charge interest "in excess of 1 percent per month," but that "the intent was to impose the conditions and duties of Chapter 4 on federal credit unions even though their authorized interest rate was set by federal law." We cannot agree with that argument.

The other loans authorized in 5069—4.01 in which interest rates of more than 10% but not more than 16% are permitted are "balloon" payment loans authorized in para-

graph (3) and "open end" loans authorized in paragraph (4). Conceivably, using either approach, a federal credit union could make an interest-bearing loan of not more than 1 percent per month. However, the loan would not be made under authority of Article 5069—4.01. It would be made under authority of 12 U.S.C.A. § 1757(5)(A)(vi), which has been held to override state usury laws and render them unenforcible against federal credit unions. *Christian v. Atlanta Army Depot Federal Credit Union* (1976) 140 Ga.App. 277, 231 S.E.2d 7; *McAnally v. Ideal Federal Credit Union*, (Okl.1967) 428 P.2d 322. Accordingly, federal credit unions do not fall within the provisions of Chapter four of Title 79. Rather, in the field in question, they are regulated under the Truth in Lending Act, 15 U.S.C.A. § 1601 et seq. as implemented in Regulation Z (12 C.F.R. 226.1 et seq., following 15 U.S.C.A. § 1700).

The judgment is affirmed.